COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, McClanahan and Senior Judge Coleman
Argued at Richmond, Virginia


MICHAEL PAUL SHIFLETT, S/K/A
  MICHAEL C. SHIFFLETT
                                                          OPINION BY
v.      Record No. 2717-04-2            JUDGE ELIZABETH A. McCLANAHAN
                                                        DECEMBER 13, 2005
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                              Thomas V. Warren, Judge

           Kevin E. Johnson (Johnson Jones, LLP, on brief), for appellant.

           Robert H. Anderson, III, Senior Assistant Attorney General (Judith
           Williams Jagdmann, Attorney General, on brief), for appellee.


       Michael Paul Shiflett appeals his misdemeanor conviction, on a conditional guilty plea,

for driving after having been adjudicated an habitual offender in violation of Code § 46.2-357.

Shiflett contends the trial court erred in denying his motion to suppress evidence of the violation

because the officer who stopped him lacked a reasonable, articulable suspicion of unlawful

conduct to justify an investigatory traffic stop.  For the reasons that follow, we affirm the

decision of the trial court.

                                      I.  Background

       In reviewing the trial court's denial of Shiflett's motion to suppress, we consider the

evidence and all reasonable inferences that may be drawn from the evidence in the light most

favorable to the Commonwealth, the prevailing party below.  See Jackson v. Commonwealth,

267 Va. 666, 672, 594 S.E.2d 595, 598 (2004).  On November 1, 2003, Warden Daniel Ross, a

game warden with the Virginia Department of Game and Inland Fisheries, issued Shiflett a

summons for a "spotlighting" violation.[1] At that time, Ross checked Shiflett's driving record and determined that his driving privilege was revoked, as Shiflett had been adjudicated an habitual offender. Ross also spoke with Shiflett about his habitual offender status when issuing the summons.

On March 31, 2004, Ross observed Shiflett walk out of a market, get into a vehicle, and drive onto a public highway. Ross proceeded to "[fall] in behind" Shiflett, at which time Ross observed objects "dangling" from the rearview mirror of Shiflett's vehicle. Based on Ross's observation of those objects and his knowledge of Shiflett's status as an habitual offender five months earlier, Ross stopped and detained Shiflett while checking on the current status of Shiflett's driving record. After confirming that Shiflett's driving privilege had not been restored, Ross issued Shiflett a summons for driving after being adjudicated an habitual offender, in violation of Code § 46.2-357.[2] Ross did not issue Shiflett a summons for any violation regarding objects hanging from the rearview mirror.

At a pretrial suppression hearing, Shiflett moved to suppress the evidence obtained as a result of the stop, contending the stop was illegal. Specifically, Shiflett argued that Ross effected the stop without a reasonable, articulable suspicion that Shiflett was involved in some form of criminal activity, in violation of Shiflett's Fourth Amendment rights. The trial court concluded that the stop was legally justified, and therefore denied the motion, upon finding that Ross possessed a reasonable suspicion that Shiflett was driving without a license as an habitual

---

[1] A "spotlighting" violation refers to a violation of Code § 29.1-523, which proscribes killing, or attempting to kill, deer after dark "by use of a light attached to any vehicle or a spotlight or flashlight from any vehicle."

[2] Pursuant to Code § 46.2-357, "[i]t shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle . . . on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect." Code § 46.2-357(A). In the absence of aggravating circumstances, a violation of this provision is a Class 1 misdemeanor. Code § 46.2-357(B)(1).

offender.[3] Shiflett subsequently entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress.

## II. Analysis

When this Court reviews a trial court's denial of a motion to suppress, "'the burden is upon the [defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). Where a Fourth Amendment challenge is at issue, "'[u]ltimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact." Id. at 197-98, 487 S.E.2d at 261 (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). Thus, "we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson, 267 Va. at 673, 594 S.E.2d at 598.

In this case, Warden Ross stopped Shiflett's vehicle and detained him, effecting a seizure for Fourth Amendment purposes. See Delaware v. Prouse, 440 U.S. 648, 654 (1979); Jackson, 267 Va. at 672, 594 S.E.2d at 598; Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (*en banc*). To justify such action, a police officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S.1, 30 (1968)). "Actual proof that criminal activity is afoot is not necessary." Harman v. Commonwealth, 15 Va. App. 440, 444,

---

[3] The trial court did not consider Ross's observation of the objects hanging from the rearview mirror of Shiflett's vehicle as an alternative justification for the stop. In view of our decision affirming the court's ruling on the motion based on Ross's reasonable suspicion that Shiflett was driving without a license as an habitual offender, we need not address this alternative justification for the stop.

425 S.E.2d 77, 79 (1992). Consequently, "[a]n investigatory stop under Terry anticipates that some innocent people may be stopped. Nevertheless, it is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001) (citing Illinois v. Wardlow, 528 U.S. 119, 126 (2000)).

A reasonable suspicion justifying an investigatory stop is "something more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity," but "something less than probable cause." Jackson, 267 Va. at 673, 594 S.E.2d at 598 (quoting Terry, 392 U.S. at 27) (some internal quotation marks and other citations omitted). However, "[t]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider 'the totality of the circumstances—the whole picture.'" Reel v. Commonwealth, 31 Va. App. 262, 266, 522 S.E.2d 881, 883 (2000) (quoting Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994)).

The question thus presented under this objective standard is: "would the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Iglesias v. Commonwealth, 7 Va. App. 93, 102, 372 S.E.2d 170, 175 (1988) (quoting Terry, 392 U.S. at 21-22). Because of Ross's recent knowledge of Shiflett's habitual offender status and his discussion with Shiflett about that status, Ross possessed a reasonable, articulable suspicion at the time of the stop that criminal activity was "afoot," i.e. that Shiflett was driving on a public highway without the privilege to do so, after having been declared an habitual offender. See Prouse, 440 U.S. at 663 (explaining that investigatory traffic stop does not violate Fourth Amendment when officer possesses reasonable

and articulable suspicion that driver is unlicensed). Thus, Warden Ross did act appropriately in stopping and detaining Shiflett.

Shiflett contends that the stop was based on no more than Ross's "hunch" that Shiflett was driving without a license. He argues that, because Ross's information regarding Shiflett's habitual offender status was five months old at the time of the stop, the information was stale, thus negating it as justification for the stop. In support of this contention, Shiflett relies on Stovall v. Commonwealth, 213 Va. 67, 189 S.E.2d 353 (1972), in which the Supreme Court reversed the defendant's conviction for possession of illegal drugs because the incriminating evidence was the product of a search warrant issued upon information that was "too stale." Id. at 70, 189 S.E.2d at 356. There, the information was 72 days old. Id. The Supreme Court reasoned that "evidence that one was illegally in possession of drugs on a given date is not probable cause to believe that he possesses illegal drugs 72 days thereafter." Id.

Stovall is clearly distinguishable from the instant case. First, Stovall involved a review of a search warrant under the probable cause standard, not a review of an investigatory traffic stop under the reasonable suspicion standard. Second, one's possession of illegal drugs, transitory in nature, does not equate with one's ongoing status upon being adjudicated an habitual offender. Under Code § 46.2-356, a person who has been adjudicated an habitual offender generally will continue in that status for ten years and thereafter until the privilege has been restored by a court of competent jurisdiction.[4] See, e.g., Sink v. Commonwealth, 28 Va. App. 655, 660, 507 S.E.2d

---

[4] Code § 46.2-356 provides in its entirety as follows:

> No license to drive motor vehicles in Virginia shall be issued to any person determined or adjudicated an habitual offender (i) for a period of ten years from the date of any final order of a court entered under this article or if no such order was entered then the notice of the determination by the Commissioner finding the person to be an habitual offender and (ii) until the privilege of the person to drive a motor vehicle in the Commonwealth has been

670, 672 (1998) (holding that defendant's habitual offender status remained in effect twenty-three years after he had been adjudicated an habitual offender). Although Ross's knowledge that Shiflett was an habitual offender five months earlier was not conclusive evidence that Shiflett was still an habitual offender, that fact gave Ross a reasonable basis to suspect that he was still an habitual offender, which, in turn, justified the investigatory stop. See Glasco v. Commonwealth, 26 Va. App. 763, 771, 497 S.E.2d 150, 154 (1998) (holding that officer's knowledge of defendant's arrest two weeks earlier on charges that often, but not always, resulted in suspension of driver's license established reasonable suspicion that defendant was driving without license at time of stop); see also Anderson v. State, 592 S.E.2d 910, 913 (Ga. Ct. App. 2004) (holding that officer's knowledge four months earlier that defendant's license was suspended was not "too remote" to establish reasonable suspicion that defendant "might be driving on a suspended license" at time of stop); State v. Yeargan, 958 S.W.2d 626, 633 (Tenn. 1997) (holding that officer's knowledge six months earlier that defendant's license was revoked for DUI conviction established reasonable suspicion that defendant was driving on revoked license at time of stop).

Shiflett also contends that Ross acted unreasonably because he could have used a less intrusive means of confirming Shiflett's habitual offender status by first obtaining the information on his patrol car radio before making the stop. This contention is also without merit. The United States Supreme Court has expressly rejected such notion, stating that "[t]he

_____

restored by an order of a court entered in a proceeding as provided in this article.

For provisions addressing the procedure under which certain habitual offenders may seek restoration of driving privileges after the passage of a specified amount of time, see Code § 46.2-360 (detailing procedure for restoring driving privileges to certain habitual offenders after a five-year period) and Code § 46.2-361 (detailing procedure for restoring driving privileges to certain habitual offenders after a three-year period).

reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and it would require courts to indulge in unrealistic second-guessing." Sokolow, 490 U.S. at 11 (internal quotation marks and citations omitted).

Finally, we reject Shiflett's assertion that our affirmance of the trial court's decision would mean a person adjudicated an habitual offender would be "forever subject to the whim of law enforcement seizure for the alleged purpose of ascertaining the status of his driving privileges." Courts must judge the validity of investigatory traffic stops, as seizures under the Fourth Amendment, based on "the facts of each case," even if such determinations "'create difficult line-drawing problems.'" DePriest v. Commonwealth, 4 Va. App. 577, 586, 359 S.E.2d 540, 544 (1987) (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)). The relevant passage of time (five months) was of short enough duration, relative to the general duration of one's habitual offender status (ten years), to compel our conclusion that the officer's earlier knowledge of that information was an objectively reasonable justification for his suspicion at the time of the investigatory stop that Shiflett was driving illegally.

III. Conclusion

For these reasons, we hold that the stop of Shiflett's vehicle did not violate the Fourth Amendment and that the trial court properly denied the motion to suppress. Therefore, we affirm Shiflett's conviction.

Affirmed.