COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia

ALEXIS JAVIER-PAZ

MEMORANDUM OPINION[*] BY
v.      Record No. 1103-12-4      JUDGE JERE M.H. WILLIS, JR.
MARCH 19, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher, Judge

Darwyn L. Easley (Easley Law Firm, on briefs), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

On appeal from his conviction of possession of more than five pounds of marijuana with

intent to distribute, transporting more than five pounds of marijuana into the Commonwealth

with the intent to sell or distribute, and possession of cocaine, Alexis Javier-Paz (appellant)

contends the trial court erred: (1) in relying on a police officer's testimony concerning the basis

for stopping appellant's truck where the officer's testimony lacked credibility; (2) in applying an

erroneous legal standard and analysis as to whether the officer had a reasonable basis to stop

appellant's truck for defective equipment; (3) in denying his motion to suppress evidence when

the officer failed to verify whether the vehicle's purportedly defective equipment conformed to

Florida or federal law; (4) in denying his motion for a new trial because the Commonwealth

failed to disclose exculpatory evidence; and (5) in refusing to mitigate his sentence based on "an

apparent belief that the jury's sentence recommendation is inviolable."

For the following reasons, we affirm the judgment of the trial court.

_____
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On July 21, 2010, Officer Christoforos Mamalis and his partner were patrolling as part of a highway drug interdiction team. Mamalis observed a truck driven by appellant traveling north on Interstate 95. Mamalis testified he noticed the truck had "an excessive amount of chrome on it which attracted [his] eye." He began to follow the truck and saw that the rear license plate had a dirty cover. He testified the cover "obstruct[ed] the view" of the license plate. He also testified:

> [W]hen we were directly behind the vehicle, the rear tail lights looked to be as mirrors, which when the sun hit, you could actually see the reflection of me sitting in the cruiser driving down 95. You could actually see the cruiser in the reflection of the rear tail lights.

Mamalis described the tail lights as appearing to be "mirrors." He testified he believed they violated Code § 46.2-1003, stating, "You're not allowed to have any unapproved equipment that can alter or change a motor vehicle that is not approved." Based on these observations, Mamalis stopped the truck. With appellant's consent, the truck was searched. One hundred thirteen pounds of marijuana were found in the trailer. In the cab was found cocaine that appellant admitted was his.

The trial court viewed photographs of the vehicle. It ruled the dirty license plate cover did not provide a reasonable basis for the stop. However, it found the photographs of the tail lights were "consistent" with Mamalis's testimony and the lights "appear[ed] to have a reflective coating on them." It noted that justification for the stop did not require Mamalis to have proof that the reflective tail lights were "in fact a violation." The trial court stated, "The officer would have reasonable, articulable suspicion if there was some reason to believe that [the lights] might be a violation" of the Code.

Appellant moved to suppress the drugs found in the trailer. During the hearing on the motion to suppress, Mamalis testified the truck had Florida license plates. He acknowledged that

he did not, before stopping the truck, determine whether the dirty license plate cover or the reflective tail lights were violations of Florida or federal transportation laws.

Officer Patrick Briant testified the bill of lading showed the trailer contained garments. He testified that appellant initially told him he did not know what was inside the trailer. However, appellant later told Briant he was carrying a load of t-shirts, that he was present as the trailer was loaded in Florida, and was present when the trailer door was sealed. Once the door was sealed, only the receiving customer was authorized to break the seal.

Briant determined the seal number on the bill of lading did not match the seal that was located on the back of trailer. In addition, the seal "came undone without [Briant] putting any force on it." Appellant told Briant he had no knowledge of anyone tampering with the seal on the back of the trailer. He said that during his entire trip, the trailer had been secured and no one had been inside.

There was a passenger in the truck when it was stopped. Appellant gave conflicting accounts concerning the passenger. At one point, he said the passenger was going to help him drive the truck back to Florida. Later, he said he was only giving the passenger a ride.

Analysis

I. The Stop

In his first three assignments of error, appellant challenges the stop of the truck. First, he contends the trial court erred in relying on Officer Mamalis's testimony concerning grounds for the stop. Next, he contends the trial court applied an incorrect legal standard when analyzing whether Mamalis had a reasonable basis to stop the truck. Finally, he contends that before stopping the truck, Mamalis was required to determine whether its purportedly defective equipment conformed to Florida and federal transportation laws.

- 3 -

"On appeal from a denial of a suppression motion, we must review the evidence in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Slayton v. Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review de novo on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)).

To justify stopping a vehicle, a police officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)). "'Actual proof that criminal activity is afoot is not necessary.'" Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760 (2005) (quoting Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992)). An investigatory stop under Terry "is a lawful stop designed to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001). In addition, as the United States Supreme Court has explained, the reasonable suspicion standard requires only "some minimal level of objective justification" for making the stop in question. I.N.S. v. Delgado, 466 U.S. 210, 217 (1984).

- 4 -

An officer may stop a vehicle when he observes an equipment violation.  McCain v. Commonwealth, 275 Va. 546, 553, 659 S.E.2d 512, 516 (2008).  In determining whether a police officer had a reasonable suspicion justifying a stop, a reviewing court must consider the totality of the circumstances "objectively through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer."  Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989).  This evaluation is based on "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken."  Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Applying these standards, we conclude that Mamalis's suspicion that the reflective tail lights were an equipment violation was reasonable and justified the stop.  Mamalis recited observed facts concerning the reflective tail lights which reasonably supported his belief that they might violate equipment requirements.  This belief, supported by his articulated facts, justified the stop.

> "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct.  Indeed the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal--to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'"  4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004) (citations and footnote omitted).

Raab v. Commonwealth, 50 Va. App. 577, 581-82, 652 S.E.2d 144, 147 (2007) (*en banc*).  The Fourth Amendment bars only investigatory detentions based upon "inarticulate hunches" devoid of any arguably supportive factual basis.  Terry, 392 U.S. at 22.

The trial court accepted and believed Mamalis's testimony. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Mamalis's testimony was competent and was not inherently incredible. It was corroborated by the photographs of the tail lights, which the trial court found consistent with his description.

We disagree with appellant's assertion that the trial court applied an incorrect legal standard. Appellant's assertion is based on the trial court's remark that "[t]he officer would have reasonable, articulable suspicion if there was some reason to believe that it might be a violation" of the Code. As noted above, to justify a stop of a vehicle, a police officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" Sokolow, 490 U.S. at 7 (quoting Terry, 392 U.S. at 30). "'Actual proof that criminal activity is afoot is not necessary.'" Shiflett, 47 Va. App. at 146, 622 S.E.2d at 760 (quoting Harmon, 15 Va. App. at 444, 425 S.E.2d at 79). Furthermore, the trial court, when announcing its ruling, correctly stated the "standard applicable at this point" to be "the officer has to have reasonable suspicion, which is a particularized and objective basis for suspecting that the person stopped is engaged in some form of criminal activity." The trial court also stated, "Where an officer reasonably suspects that a drive[r] is [in] violation [of] any one of a multitude of applicable traffic and equipment regulations, the officer may legally stop the vehicle." These statements demonstrate the trial court's application of the correct legal standard.

Appellant argues it was improper for Mamalis to stop the truck, which displayed Florida license plates, without first confirming that the questioned equipment did not conform to the laws of Florida or the United States Department of Transportation. However, the truck was travelling in Virginia. Mamalis testified he believed the tail lights violated Code § 46.2-1003,

stating, "You're not allowed to have any unapproved equipment that can alter or change a motor vehicle that is not approved." Although Mamalis cited to Code § 46.2-1003, Code § 46.2-1002 more closely tracks the language recited by Mamalis. It provides:

> It shall be unlawful for *any person* . . . to use or have as equipment on a motor vehicle operated on a highway any lighting device, warning device, signal device . . . or other equipment for which approval is required . . . or any part or parts tending to change or alter the operation of such . . . equipment unless of a type that has been . . . approved by the Superintendent . . . .

(Emphasis added.)

Code § 46.2-1003 provides: "It shall be unlawful for *any person* to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in [Code] § 46.2-1002 which is defective or in unsafe condition." (Emphasis added). Both statutes apply to "any person" who operates a vehicle on a highway in Virginia. This includes vehicles registered in another state. See Hall v. Hockaday, 206 Va. 792, 798, 146 S.E.2d 215, 219 (1966) ("Motor vehicles operating on the highways of this State are required to comply with the statutes relating to lighting equipment in effect at the time of their operation."). It is immaterial whether the equipment may have complied with federal law or the laws of any other state. Appellant's argument lacks merit.

## II. Exculpatory Evidence

When an exculpatory evidence claim is reviewed "the burden is on appellant to show that the trial court erred." Galbraith v. Commonwealth, 18 Va. App. 734, 739, 446 S.E.2d 633, 637 (1994).

Due process requires the Commonwealth to disclose to the defendant all favorable evidence material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83, 86-87 (1963).

> "A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused." "There are three components of a true Brady violation: The evidence at issue must

- 7 -

be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

Garnett v. Commonwealth, 49 Va. App. 524, 529-30, 642 S.E.2d 782, 785 (2007) (*en banc*) (citations omitted), aff'd, 275 Va. 397, 657 S.E.2d 100 (2008). "'[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Workman v. Commonwealth, 272 Va. 633, 645, 636 S.E.2d 368, 374 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

At trial on August 17, 2011, Detective Carroll testified that the original seal was found in the trailer. Later, on November 28, 2011, the Commonwealth advised appellant that, subsequent to the completion of the trial, Mamalis found the original seal next to a set of bolt cutters in a compartment located on the passenger's side of the cab. Appellant contends this was exculpatory evidence because the "clear implication" is that the bolt cutters were used to cut the original seal from the trailer in order to load the contraband found in the trailer. Appellant also asserts the "additional implication" is that these items were placed in the cab compartment by the culprit, and appellant's passenger had ample opportunity to have placed the contraband in the trailer unbeknownst to appellant. Appellant argues that because the evidence of the location of the original seal and bolt cutters was not disclosed until after the trial, he had no opportunity to advance this defense theory and was thus prejudiced.

Following a hearing, the trial court denied the motion. It found the Commonwealth had no knowledge of the location of the original seal prior to the start of the trial. Therefore, the late disclosure of the seal's location did not violate the discovery order that had been entered on the first day of trial.

The trial court further held that because the evidence of the seal's location was inculpatory, rather than exculpatory, no <u>Brady</u> violation occurred. We agree. The trial court found that the discovery of the original seal in the cab demonstrated that appellant had control over more than one seal at the time of his arrest. It reasoned that removal of the original seal from the trailer, which was controlled by appellant, thereby gave appellant access to the trailer. It held that appellant's control over both the original seal and the replaced seal tended to demonstrate his intentional possession of the marijuana recovered from the trailer. It held that the presence of the seal and the bolt cutters in the cab tended to connect appellant with the removal of the original seal and the resulting access to the trailer. We find no error in this analysis.

We also note, as did the trial court, that appellant cross-examined Detective Carroll about the original seal, showing that he was aware that it had been found. The location of that discovery was available to him. The record reflects no reason to conclude that the post-trial discovery of where the seal had been located prevented appellant from developing and presenting his alternative theories of the case--such as his theory that the passenger could have put the marijuana in the trailer unbeknownst to him. Nothing in the record provides a basis to conclude that the late discovery and disclosure of the location of the seal undermines confidence in the outcome of the trial. Appellant has shown no prejudice to the presentation of his defense. Accordingly, we find no <u>Brady</u> violation.

### III. <u>Sentencing</u>

Appellant contends the trial court erred in refusing to mitigate the sentence recommended by the jury because of an apparent belief that the jury's sentencing recommendation is "inviolable." He asserts that at the February 10, 2012 sentencing hearing, the trial court stated,

"But I don't have – I have the authority but I'm not sure I have the right to be changing jury verdicts." He argues that statement demonstrated that the trial court believed that the jury's sentencing recommendation was "inviolable."

The final order in this case was entered on February 16, 2012. In order to become part of the record on appeal, the transcripts were required to be filed on or before April 16, 2012. See Rule 5A:8. The transcript of the February 10, 2012 sentencing hearing was filed on April 18, 2012, two days after the deadline. No written statement of facts was filed. Without a timely filed transcript or written statement of facts we cannot determine whether the trial court made the challenged statement or whether timely and proper objection was made. Therefore a transcript or statement of facts is indispensable to a determination of this assignment of error. See Turner v. Commonwealth, 2 Va. App. 96, 99-100, 341 S.E.2d 400, 402 (1986). "The burden is upon the appellant to provide us with a record which substantiates the claim of error. In the absence thereof, we will not consider the point." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991). Accordingly, we do not consider this assignment of error.

The judgment of the trial court is affirmed.

Affirmed.