UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

TEOUNTA ERNEST LEWIS

v.      Record No. 1089-16-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JEAN HARRISON CLEMENTS
OCTOBER 31, 2017

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge[1]

Lauren Whitley, Deputy Public Defender, for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Appellant was convicted in a bench trial of possession of a firearm after having been

convicted of a felony and sentenced to two years in prison.  He asserts on appeal that the trial

court erred in denying his motion to suppress evidence obtained after the police stopped the

vehicle in which he was a passenger for having a defective license plate light.  We hold the

officer had reasonable articulable suspicion for the stop and affirm appellant's conviction.

On appeal from a trial court's ruling on a motion to suppress, "the burden is upon the

[defendant] to show that the ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error."  Shiflett v. Commonwealth, 47 Va. App. 141, 145,

622 S.E.2d 758, 760 (2005) (quoting McGee v. Commonwealth, 25 Va. App. 193, 197, 487

S.E.2d 259, 261 (1997) (*en banc*)).  The appellate court must "give deference to the factual

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Rupe presided at trial.  T. J. Markow, Judge Designate, heard the motion to suppress.

findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Id. at 145-46, 622 S.E.2d at 760 (quoting Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004)). Additionally, when an issue requires statutory construction, we employ *de novo* review. See Otey v. Commonwealth, 61 Va. App. 346, 349, 735 S.E.2d 255, 257 (2012).

So viewed, the record establishes that at about 10:45 p.m., on June 6, 2015, Detective Ed Aeshlimann, accompanied by another Richmond police officer, was driving an unmarked police car in a public housing complex in the City of Richmond as part of a task force charged with "tak[ing] guns off the street." While following a car from a distance of between fifty feet and fifty yards, the detective saw the car had two lights that were intended to illuminate the license plate but only the left light was lit and the right light was not functioning. The detective was able to read the license plate. The officer initiated a traffic stop of the vehicle for having defective equipment.

The car traveled for twenty to thirty seconds before stopping. Aeshlimann saw the four people in the car "making a lot of movement." Appellant was in the rear passenger seat behind the driver. As the officer approached the car, he saw appellant lean forward and put a small, black object in the rear pocket of the driver's seat. Once the occupants were out of the vehicle, the detective detected a "very strong odor of burnt marijuana . . . radiating from inside the car." During a search of the vehicle, the officers found a loaded black handgun in the rear pocket of the driver's seat. Appellant admitted he was a convicted felon and was arrested. After appellant was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), he said he carried the gun because he had been injured in a previous shooting and was still recovering from his injury.

Appellant moved to suppress the evidence, arguing that one defective license plate light was not adequate grounds to stop the vehicle. Appellant also contended that he had not

voluntarily waived his Miranda rights. The trial judge denied the suppression motion, finding the police had reasonable suspicion for the stop and that appellant's Miranda waiver was valid.[2] Appellant filed a motion for reconsideration, which the court denied.

The Fourth Amendment protects individuals from unreasonable searches and seizures. See, e.g., Sidney v. Commonwealth, 280 Va. 517, 522, 702 S.E.2d 124, 127 (2010). Analysis of a Fourth Amendment claim turns on whether the officer's actions were objectively reasonable. See Mason v. Commonwealth, 291 Va. 362, 368, 786 S.E.2d 148, 151 (2016). A traffic stop to investigate a suspected violation of law does not violate the Fourth Amendment if the officer reasonably suspected the person stopped was breaking the law. See, e.g., Whren v. United States, 517 U.S. 806, 810 (1996) (concluding that officer who observes traffic violation may stop vehicle without violating Fourth Amendment); Mason, 291 Va. at 371-72, 786 S.E.2d at 153 (finding no Fourth Amendment violation where police officer stopped vehicle in which defendant was riding to determine if object dangling from rearview mirror violated Code § 46.2-1054); McCain v. Commonwealth, 275 Va. 546, 553, 659 S.E.2d 512, 516 (2008) (finding police officer had reasonable suspicion to stop vehicle for equipment violation where officer observed that expiration date of license plate was covered by plastic border on rear license plate).

"A 'reasonable suspicion' requires only 'some minimal level of objective justification' for making such a stop." Branham v. Commonwealth, 283 Va. 273, 280, 720 S.E.2d 74, 78 (2012) (quoting I.N.S. v. Delgado, 466 U.S. 210, 217 (1984)). "Whether an officer has a reasonable suspicion to justify such a detention is 'based on an assessment of the totality of the circumstances.'" Id. at 280, 720 S.E.2d at 78 (quoting Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008)). "Reasonable suspicion arises from the combination of an

_____

[2] Appellant did not raise his Miranda claim on appeal.

- 3 -

officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground." Heien v. North Carolina, 135 S. Ct. 530, 536 (2014). "The limit is that 'the mistakes must be those of reasonable men.'" Id. (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

We hold the basis for the stop in this case was objectively reasonable. As pertinent here, Code § 46.2-1002 provides that it is

> unlawful for any person . . . to use or have as equipment on a motor vehicle operated on a highway any lighting device, . . . for which approval is required by any provision of this chapter[,] or any part or parts tending to change or alter the operation of such device, . . . unless of a type that has been submitted and approved by the Superintendent [of the State Police] or meets or exceeds [national] standards and specifications . . . .

Code § 46.2-1003 states that "[i]t shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is defective or in unsafe condition." Code § 46.2-1010 requires that "[e]very vehicle driven or moved on a highway within the Commonwealth shall at all times be equipped with such lights as are required in this chapter for different classes of vehicles[,]" and "[t]he lights shall at all times be capable of being lighted, except as otherwise provided." Code § 46.2-1013 states:

> Every motor vehicle . . . shall carry at the rear two red lights plainly visible in clear weather from a distance of 500 feet to the rear of such vehicle. Such tail lights shall be constructed and so mounted in their relation to the rear license plate as to illuminate the license plate with a white light so that the same may be read from a distance of 50 feet to the rear of such vehicle. Alternatively, a separate white light shall be so mounted as to illuminate the rear license plate from a distance of 50 feet to the rear of such vehicle. Any such tail lights or special white light shall be of a type approved by the Superintendent.

Appellant argues that he complied with Code § 46.2-1013 because one of the two lights illuminating his license plate was functioning and the license plate could be read from a distance

of fifty feet. Thus he contends the non-functioning light was superfluous and the police lacked any basis for stopping the vehicle. We disagree, as we find the holding in Otey governs this case. Appellant argues Otey does not control because the case concerns different Code sections with different requirements.[3] However, that is a distinction of no consequence, as the principles set forth in Otey apply equally in appellant's case.

In Otey, a police officer stopped a vehicle after noticing one of the two lights in the high mount brake light was not lit, although the brake light was visible from a distance of approximately 500 feet. Otey, 61 Va. App. at 347-48, 735 S.E.2d at 256. Otey argued the defective brake light was not a reasonable basis for the stop because the brake light was visible from 500 feet, as required by Code § 46.2-1014. Otey, 61 Va. App. at 350, 735 S.E.2d at 257. This Court rejected his reasoning, holding that the requirements for brake lights set forth in Code § 46.2-1014 did not define "defective" for purposes of Code § 46.2-1003. Otey, 61 Va. App. at 350, 735 S.E.2d at 257. The Court adopted the plain meaning of "defective" as "faulty, deficient," and concluded that "[a] brake light that lights up by only half" met that definition. Id. The Court held that "Code § 46.2-1003 prohibits the use on a vehicle of *any* equipment mentioned in Code § 46.2-1002 that is either unsafe or defective, whether or not this equipment exceeds the minimum requirements set forth elsewhere in the Code." Id. (quoting Ragland v. Commonwealth, No. 1036-96-2, 1997 Va. App. LEXIS 109 (Va. Ct. App. Feb. 18, 1997)).

Similarly, in appellant's case, the fact that the license plate was visible from fifty feet did not mean there was no defect in the lights illuminating the license plate. Interpreting the statute

---

[3] The statutes at issue in Otey were Code §§ 46.2-1014 and 46.2-1014.1. Code § 46.2-1014 states that vehicles "shall be equipped with at least two brake lights" of an approved type that "automatically exhibit a red or amber light plainly visible in clear weather from a distance of 500 feet to the rear of such vehicle when the brake is applied." Code § 46.2-1014.1 provides that passenger cars manufactured after 1986 and registered in Virginia must be "equipped with a supplemental center high mount stop light" that is "actuated only in conjunction with the vehicle's brake lights and hazard lights."

to mean that a license plate light is defective only if the license plate is not visible from fifty feet would render meaningless the language in Code § 46.2-1003 prohibiting defective equipment. See Otey, 61 Va. App. at 351, 735 S.E.2d at 258 (stating that defendant's interpretation of statutes at issue would make language in Code § 46.2-1003 regarding defective equipment "superfluous and redundant").

Appellant acknowledges that in Ragland the defendant's faulty tail light, which had part of the red covering out of place so that a white light was plainly visible, was defective equipment, "no matter how minimal," because Code § 46.2-1013 required that the two red rear tail lights be visible from a distance of 500 feet. The intent of that language is no different from the requirement in the same statute that the two tail lights "be constructed and so mounted" as to make the license plate visible from a distance of fifty feet. Code § 46.2-1013. Thus, if both lights illuminating the license plate are not operational, the equipment is defective, "no matter how minimal."

We disagree with appellant's assertion that Code § 46.2-1013 "does not mandate a certain number of lights" to achieve its purpose of illuminating a license plate. The statute provides two alternatives for illuminating a license plate. Either two red tail lights must be "constructed and so mounted in their relation to the rear license plate as to illuminate the license plate with a white light" or "a separate white light shall be so mounted as to illuminate the rear license plate." Code § 46.2-1013.

The administrative regulations for vehicle inspections provide that the vehicle must be equipped with an approved license plate lamp that "emits a white light," and the lamp may be "separate" or "part of a combination rear lamp." 19 VAC 30-70-150(3), (4). As this Court noted in Otey, to pass inspection under the Virginia Administrative Code, a vehicle's rear light assembly must "work as designed by the manufacturer," and all rear lamps must be "in operating

condition." Otey, 61 Va. App. at 351, 735 S.E.2d at 258 (quoting 19 VAC 30-70-150(1), (2), (10)). Thus, if a vehicle is equipped with two license plate lights, both must function properly.

Because Detective Aeschlimann had reasonable articulable suspicion to stop the vehicle for an equipment violation, the stop did not violate the Fourth Amendment. See Otey, 61 Va. App. at 352, 735 S.E.2d at 258. Further, even if the officer misinterpreted the requirements of Code § 46.2-1013, no Fourth Amendment violation occurred because the officer's interpretation was reasonable. See Heien, 135 S. Ct. at 540 (finding no Fourth Amendment violation where officer mistakenly interpreted "stop lamp" provision of a North Carolina statute to require two brake lights, as statute had not been construed by state appellate courts and officer reasonably interpreted law).[4] For these reasons, we uphold the ruling of the trial court denying the motion to suppress and affirm appellant's conviction.

Affirmed.

---

[4] To the extent appellant relies on Commonwealth v. Snyder, No. 0234-07-2, 2007 Va. App. LEXIS 307 (Va. Ct. App. Aug. 14, 2007), in which a panel of this Court held that a police officer lacked reasonable suspicion to stop Snyder's vehicle for having a broken passenger side mirror, the holding in Snyder was premised on the principle that the officer's mistake of law could not support the stop, a principle since rejected in Heien. See Heien, 135 S. Ct. at 536. Snyder is also inapposite because, unlike license plate lights, a passenger side mirror is not a device or equipment required by Code § 46.2-1002 and thus need not be fully functional under Code § 46.2-1003. See Code § 46.2-1082.