UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.      Record No. 0551-18-1

CRYSTAL ALEASE JOHNSON

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
SEPTEMBER 17, 2018

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Brittany A. Dunn-Pirio, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Noah D. Weisberg (Weisberg & Weisberg, PLLC, on brief), for
appellee.

Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals the trial court's pretrial

order granting Crystal Alease Johnson's motion to suppress statements made by her before a

magistrate.  On appeal, the Commonwealth contends that the trial court erred in suppressing

Johnson's statements, and in holding that the Commonwealth bore the burden of proof to

demonstrate a Miranda violation had not occurred.  Johnson assigns cross-error to the trial court's

holding that the initial traffic stop was lawful, and its alternative holding that there was an

independent basis for the search of the vehicle based upon Johnson's new and distinct crime.  For

the following reasons, we affirm.

I.  BACKGROUND

On February 2, 2017, Newport News Police Detective Jeff Blaisdell stopped Johnson's

car due to an inoperable tag light and her failure to yield at a stop sign.  Blaisdell informed

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Johnson of both reasons for the stop, and asked her for her driver's license and registration. When Johnson was unable to produce a driver's license, the officer asked her for her identification, address, and date of birth. With that information, Blaisdell returned to his car.

While Blaisdell was verifying Johnson's information, Deputy Pinkney of the Newport News Sheriff's Office approached Johnson's car with a police dog. He told Johnson to turn off her car so he could "run" his canine on the vehicle. As Pinkney stood at the front of Johnson's car with his canine, Johnson's car rolled toward them. Officers ordered Johnson out of the car and arrested her for assault and battery of a police officer. A search of Johnson's purse incident to the arrest yielded items that field-tested positive for cocaine and marijuana.

Detective Blaisdell brought Johnson before a magistrate.[1] According to her motion to suppress, Johnson made certain "allegedly incriminating" statements before the magistrate.[2]

On December 29, 2017, Johnson filed a motion for discovery and to suppress evidence. Johnson argued that the traffic stop was unlawful under the Fourth Amendment, and, even assuming that the stop was lawful, the officers lacked justification in arresting her and conducting a search of her person and car. Johnson further argued that any statements she made before the magistrate should be suppressed as she had been subject to custodial interrogation by the magistrate.

---

[1] Johnson was charged with eight offenses: possession of cocaine, in violation of Code § 18.2-250; attempted malicious wounding of a police canine, in violation of Code §§ 18.2-26 and -144.1; assault of a law enforcement officer, in violation of Code § 18.2-57; obstruction of justice, in violation of Code § 18.2-460; driving without a driver's license, in violation of Code § 46.2-300; failure to stop at a stop sign, in violation of Code § 46.2-821; improper tail lights, in violation of Code § 46.2-1013; and possession of marijuana, in violation of Code § 18.2-250.1. Pursuant to Code § 19.2-398(A), this Court will only conduct review with regards to Johnson's felony charges.

[2] These statements have not been included in the record.

The trial court held a hearing on February 12, 2018 on the portion of Johnson's motion concerning discovery.[3] On February 21, the court issued an order ruling on Johnson's discovery requests. The order also noted that the court had reviewed two video files of the stop and that the court was making "a further ruling concerning [d]efendant's upcoming hearing on the motion to suppress." The court found the officers had "probable cause to arrest [d]efendant when she attempted to drive her car away from the scene after being stopped by police." In addition, because Johnson took her personal bag with her when she followed instructions to step out of her car, "a search of the bag was clearly proper as incident to a lawful arrest." The court precluded argument at the later-scheduled suppression hearing on the matter of probable cause for Johnson's arrest. It also specifically withheld ruling on the legality of the initial traffic stop or statements made by Johnson subsequent to her arrest.

At the suppression hearing, Detective Blaisdell testified about the events surrounding the traffic stop. Blaisdell then testified about circumstances surrounding the statements made by Johnson to the magistrate. He recalled Johnson making statements to the magistrate, and he wrote those statements down at the time "so [he] didn't have to remember them verbatim." He did not have an independent recollection of the statements she made. Blaisdell testified that the statements he wrote down were the result of Johnson "having a conversation with the magistrate after being sworn in." Johnson was "talking so much [he] could only write down her answers." Blaisdell testified that the magistrate was "asking [Johnson] at least some questions," but he did not remember all the questions that were asked. The officer did not remember what Johnson was specifically responding to when she made the statements that he wrote down.

In response to questioning by the Commonwealth, Blaisdell did remember that there were several specific questions the magistrate did not directly ask Johnson: how many drugs she had

---

[3] The record does not contain a transcript of this hearing.

on her person during the stop; whether her car was in park; whether she was scared; if she had a problem with weed and coke; whether she had just "ha[d] a blunt"; and whether she had drugs on her person. When questioned by Johnson's counsel on how he could remember whether those specific questions were asked, Blaisdell replied, "Because it was a general . . . conversation so we had already talked about it." Blaisdell "kn[e]w" the magistrate did not ask Johnson whether she was a current user of drugs or alcohol, and stated that Johnson was at no point asked questions about her drug use. Further, Blaisdell did not ask Johnson any questions while she was talking to the magistrate, and had already written his probable cause statement at the time Johnson made the statements.

In response to a question by the court, Blaisdell stated that his notes did not reflect when Johnson was read her Miranda rights.

Ruling on the motion to suppress, the trial court found that the initial traffic stop was lawful, crediting the detective's testimony that the tag light was out and that Johnson did not stop at the stop sign. The court then ruled that Johnson's statements to the magistrate would be suppressed. The court first found that certain specific questioning by a magistrate—but not questioning related to bond and pretrial release—was subject to Miranda, based upon two Virginia cases, Commonwealth v. Wease, 46 Va. Cir. 61 (1998), and Blaylock v. Commonwealth, 26 Va. App. 579, 496 S.E.2d 97 (1998). Further, the court found that Johnson's statements were not admissible because the court did not "know what questions were asked" and "[t]he [o]fficer's recollection [was] not clear enough whether it was a free rein conversation that was happening with Ms. Johnson in front of the magistrate . . . ."

On March 28, 2018, the court issued an order reflecting the ruling from the bench, granting Johnson's motion to suppress her statements and denying her motion "as to the evidence obtained by the Newport News Police Department." That same day, the Commonwealth

appealed the order. On April 11, 2018, Johnson filed a notice of cross-appeal from the suppression order.

## II. ANALYSIS

### A. Standard of Review

When a pretrial motion to suppress is reviewed on appeal, the burden is on the appellant, here the Commonwealth, to show that the ruling, when the evidence is considered in the light most favorable to the prevailing party below, constituted reversible error. Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998). In reviewing the trial court's ruling on a motion to suppress, "'[w]e are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them.'" McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)). In an appeal brought by the Commonwealth pursuant to Code § 19.2-398, we view the facts in the light most favorable to the prevailing party below, and we grant that party all reasonable inferences fairly deducible from that evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). Accordingly, when considering the Commonwealth's appeal we view the facts in the light most favorable to Johnson, and when considering Johnson's cross-appeal we view the facts in the light most favorable to the Commonwealth.

### B. The Commonwealth's Appeal

The Commonwealth argues that the trial court erred in suppressing Johnson's statements because the statements were not made while Johnson was being interrogated by a law enforcement officer.

"Where an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in Miranda [v. Arizona, 384 U.S.

436 (1966),] . . . for any statement he makes to be admissible in evidence." Commonwealth v. Thornton, 24 Va. App. 478, 488, 483 S.E.2d 487, 491 (1997). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. A person in custody may be subjected to interrogation by "either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). In other words, "the term 'interrogation' under Miranda . . . [includes] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. The application of the "Innis standard" thus presents a question of law, "requiring [our] determination whether an objective observer would view an officer's words or actions as designed to elicit an incriminating response." Hilliard v. Commonwealth, 43 Va. App. 659, 674, 601 S.E.2d 652, 659 (2004) (quoting Blain v. Commonwealth, 7 Va. App. 10, 15, 371 S.E.2d 838, 841 (1988)).

The Commonwealth argues that the evidence adduced at the suppression hearing established that the magistrate was acting as a judicial officer and not as an agent of law enforcement during the interaction with Johnson, and thus the trial court erred in suppressing Johnson's statements made before the magistrate. We disagree, and hold that the trial court did not err in finding that there was a lack of affirmative evidence of the precise context in which Johnson made her statements. Further, because of this lack of context, the trial court did not err in finding that it was unable to determine whether the magistrate was acting only as a judicial officer during the interaction at issue.

Here, the trial court judge specifically held:

> I'm not going to let the magistrate's comments in because I think it
> is the Commonwealth's burden because I don't know what

- 6 -

> questions were asked. The [o]fficer's recollection is not clear enough whether it was a free rein conversation that was happening with Ms. Johnson in front of the magistrate, quite frankly, can probably assume that but that's not the standard. So the statements in front of the magistrate are suppressed but the other grounds, the basis and your motion to suppress are denied.

We find no error in the trial court's reasoning. In the instant case, the record does not establish the full context of the interaction between the magistrate and Johnson. Detective Blaisdell recalled Johnson making statements to a magistrate, and described the encounter as Johnson "having a conversation with the magistrate after being sworn in." Blaisdell noted that the magistrate asked Johnson "at least some questions," but he did not remember all the questions Johnson was asked. The officer could not remember what specific questions Johnson was responding to when she made the statements that he wrote down. The trial court made certain factual findings based upon Blaisdell's testimony: that it did not "know what questions were asked" and that Blaisdell's "recollection [was] not clear enough whether it was a free rein conversation that was happening with Ms. Johnson in front of the magistrate." Based upon the record at hand, we cannot say that the trial court's findings were plainly wrong or without evidence to support them.

Further, in light of Blaisdell's testimony that he did not remember all of the questions asked of Johnson by the magistrate, we reject the Commonwealth's argument that the evidence at the suppression hearing established that the magistrate was acting solely as a judicial officer. The Commonwealth contends that Blaisdell testified that the magistrate did not ask specific questions related to the offenses. While Blaisdell did testify that he recalled that the magistrate did not ask a series of questions—how many drugs she had on her person during the stop; whether her car was in park; whether she was scared; if she had a problem with weed and coke; if she had just "ha[d] a blunt"; and whether she had drugs on her person—and also did not ask about her drug or alcohol use, this does not eliminate the possibility that the magistrate could

have asked other questions that were reasonably likely to elicit an incriminating response from Johnson.[4]

In this case, the evidence failed to establish to the satisfaction of the trial court what questions were asked by the magistrate. In the absence of more detailed information regarding the precise context in which Johnson made the statements at issue, the evidence supports the conclusion that the trial court did not err in suppressing the statements because the court was unable to determine whether the circumstances in which Johnson made the statements were the functional equivalent of interrogation.

The Commonwealth additionally argues that the trial court erred in placing the burden on it to establish that the admission of statements made by Johnson did not violate Miranda. The Commonwealth takes issue with the court's statement, "I'm not going to let the magistrate's comments in because I think it is the Commonwealth's burden because I don't know what questions were asked," arguing that instead, the court's analysis should have started with whether Johnson, the defendant, proved there was a custodial interrogation. The Commonwealth relies upon an unpublished Commonwealth's appeal,[5] Commonwealth v. Butcher, No. 0314-12-3, 2012 Va. App. LEXIS 223, at *6-7 n.1 (Va. Ct. App. July 10, 2012), which it cites for the proposition that, "[u]nder settled principles, a defendant has the burden to prove all the elements necessary to demonstrate a Miranda violation."

We need not determine whether the quoted language from Butcher is applicable in this case. This is so because we do not view the trial court's isolated statement as the court placing a

_____

[4] Additionally, we can only infer that these specific questions were related to the statements that Johnson sought to suppress, as the statements themselves were not made a part of the record.

[5] Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority. See Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012).

burden on the Commonwealth to prove that the admission of Johnson's statements would not have violated Miranda. Rather, the court's statement, viewed in its full context as recited above, shows the court explaining that it did not have enough information to rule on whether the magistrate's questions constituted the functional equivalent of interrogation. The trial court did state that it thought it was the "Commonwealth's burden" because the court "didn't know what questions were asked." However, this statement merely reflects the court's inability to determine whether a violation of Miranda occurred, because Detective Blaisdell did not recall all of the questions asked by the magistrate. Thus, when examined in light of all of the court's comments, it is clear that the trial court was not placing the burden of proof of demonstrating the lack of a Miranda violation on the Commonwealth; rather, the court was simply commenting on its inability to decide whether a violation occurred here based upon the specific facts of the case.

### C. Johnson's Cross-Appeal

On cross-appeal, Johnson contends that the trial court erred in determining that the initial stop of Johnson's vehicle was lawful.

"The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures." Otey v. Commonwealth, 61 Va. App. 346, 348, 735 S.E.2d 255, 256 (2012). "[W]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes." Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). For such a stop to be lawful under the Fourth Amendment, the seizing officer must have a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760 (2005) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). A police officer may conduct

"a traffic stop when he has reasonable suspicion to believe a traffic or equipment violation has occurred." McCain v. Commonwealth, 275 Va. 546, 553, 659 S.E.2d 512, 516 (2008).

In the instant case, Blaisdell testified repeatedly at the suppression hearing that he initiated a traffic stop because Johnson had not stopped at a stop sign and her vehicle's tag lights were out. The trial court found that this testimony was credible:

> I believe the stop was lawful. The tag light was out. I believe the
> officer said she didn't stop at the stop sign . . . . I believe the
> officer when he says the taillight was out. I think the whole issue
> of him looking at this stop is quite frankly a red herring.

However, Johnson argues these factual findings were plainly wrong because "Detective Blaisdell's credibility was so thoroughly impeached at the hearing" that it was error for the court to accept his testimony about the alleged traffic infractions.

Johnson contends that the officer's use of his body camera to record the tag light approximately thirteen minutes after the stop, at which point he tapped on the tag light and stated "light's out," after Blaisdell himself had turned off the vehicle approximately seven minutes into the stop, demonstrated that he was attempting to fabricate evidence to justify the basis for the initial stop. Johnson points to Blaisdell's somewhat inconsistent testimony as to why he tapped on and specifically pointed out the tag light while recording the stop. The officer at first stated that he thought he did so in order to show the violation on camera, but later testified that he was not intentionally using the camera to demonstrate that the light was not operable, but was rather doing it to make sure himself that the light was not working. Johnson also claims that Blaisdell's testimony was inherently incredible, because while he told her that he had stopped her vehicle because her tag light was out and she had failed to stop at a stop sign, he later only mentioned the tag light violation when telling another officer the reason for the stop. She further alleges that Blaisdell's testimony was incredible because he could not remember specific questions asked by the magistrate but could identify whether certain questions were not asked.

However, the trial court rejected Johnson's arguments about Blaisdell's testimony, and credited his testimony that the tag light was not illuminated when he initiated the traffic stop. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462, 675 S.E.2d 178, 181 (2009). "[T]his [C]ourt will not seek to pass upon the credibility of the witnesses where their evidence is not inherently incredible." Rogers v. Commonwealth, 183 Va. 190, 201-02, 31 S.E.2d 576, 580 (1944). Evidence is not "incredible" unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)). Further, "[p]otential inconsistencies in testimony are resolved by the fact finder," not the appellate court. Towler v. Commonwealth, 59 Va. App. 284, 292, 718 S.E.2d 463, 467 (2011). "[T]here can be no relief" in this Court if a witness testifies to facts "which, if true, are sufficient to maintain the[] verdict, . . . [i]f the trier of the facts . . . base[d] the verdict upon that testimony," even if that "witness' credit [was] impeached by contradictory statements." Smith v. Commonwealth, 56 Va. App. 711, 718-19, 697 S.E.2d 14, 17 (2010) (quoting Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989)). In the instant case, the trial court, sitting as finder of fact, heard Blaisdell's testimony and credited his statement that the vehicle was stopped because the tag light was not working *and* because Johnson had failed to stop at a stop sign. Any minor inconsistencies in the officer's testimony did not render his testimony "so manifestly false that reasonable men ought not to believe it." Juniper, 271 Va. at 415, 626 S.E.2d at 417 (quoting Cardwell, 209 Va. at 414, 164 S.E.2d at 701). Blaisell's testimony provided more than adequate support for the trial court's conclusion that the stop of Johnson's vehicle was lawful. Thus, the

trial court did not err in finding that the initial stop of the vehicle did not violate the Fourth Amendment.[6]

## III. CONCLUSION

For these reasons, we conclude that the trial court did not err in suppressing Johnson's statements made before the magistrate, nor did it err in finding that the stop of Johnson's vehicle was lawful. Therefore, we affirm the decision of the trial court and remand for additional proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Affirmed and remanded.</u>

---

[6] Johnson's second cross-assignment of error alleges that the trial court further erred in finding that even if it determined that the initial stop was unlawful, an independent basis for the search existed based upon her new and distinct crime, assault of a law enforcement officer. As we conclude that the trial court did not err in ruling that the initial stop was lawful, we do not address the trial court's additional justification for the search of the vehicle.