COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, McClanahan and Senior Judge Willis
Argued at Chesapeake, Virginia


JOHNNY EDWARD LAWSON

                                                            OPINION BY
v.        Record No. 2192-08-1          JUDGE ELIZABETH A. McCLANAHAN
                                                            JANUARY 12, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Erin M. Kulpa, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


Johnny Edward Lawson was convicted, in a bench trial, of possessing cocaine with the

intent to distribute, in violation of Code § 18.2-248.  On appeal, Lawson argues the trial court

erred in denying his motion to suppress evidence of cocaine discovered in his vehicle because

the officer who stopped and detained him violated his Fourth Amendment rights.[1]  For the

following reasons, we affirm Lawson's conviction.

I.  BACKGROUND

"In reviewing the denial of a motion to suppress based on the alleged violation of an

individual's Fourth Amendment rights, we consider the facts in the light most favorable to the

Commonwealth."  Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 271 (2007)

(citation omitted).  Investigator Tennis with the Norfolk Police Department received information

from a confidential informant that Lawson was selling cocaine from his apartment located at

---

[1] Judge Junius P. Fulton, III, presided over the suppression hearing.  Judge Everett A.
Martin, Jr., presided over the trial and entered the final conviction and sentencing orders.

1223 Strand Street in the City of Norfolk. Pursuant to this information, Tennis conducted a two-week long surveillance of Lawson. On two occasions during that period, Tennis saw Lawson leave his apartment in his vehicle, a Jeep Grand Cherokee, travel to the "Hugo Street area park," and engage in what Tennis believed were "hand-to-hand" drug transactions from his vehicle. One such transaction occurred within twenty-four hours of Lawson's subsequent subject detention by the police.

Within the same two-week period, Investigator Tennis also saw several individuals on different occasions park their vehicles in the driveway of Lawson's apartment, enter the apartment, stay for approximately five minutes, and then exit the apartment. Tennis opined that this activity was consistent with the illicit sale of narcotics. Tennis further observed the confidential informant enter and exit Lawson's apartment in the same manner during the course of the confidential informant's "controlled purchase" of cocaine from Lawson.

Based on this information, which Investigator Tennis submitted to a magistrate in an affidavit, a search warrant was issued for Lawson's apartment. While Tennis was obtaining the search warrant, other officers, including Investigators Price and Lee, maintained Lawson's apartment under surveillance. Before Tennis returned with the warrant, Price saw Lawson leave his apartment and drive away in his Jeep. Price relayed this information to Lee, who stopped Lawson in his vehicle six to seven blocks from his apartment. Lawson consented for Lee to search Lawson's person, but no contraband was recovered.

Pursuant to instructions from Investigator Tennis, Investigator Lee detained Lawson for twenty to twenty-five minutes while waiting for a narcotics canine unit to arrive in order for Lawson's vehicle to be scanned by a trained narcotics detection dog. Investigator Decker, who handled the narcotics dog, testified that the dog alerted on the exterior of the partially opened driver's door of Lawson's Jeep. Once inside the vehicle, the dog alerted on the back of the

driver's seat. Upon searching that area of the vehicle, Decker recovered a small quantity of cocaine. While Lawson was being detained, Investigator Tennis and other officers executed the search warrant on Lawson's apartment and discovered additional contraband.

In a pretrial motion, Lawson moved to suppress the cocaine recovered from his vehicle. Relying on Michigan v. Summers, 452 U.S. 692 (1981), Lawson argued that the encounter violated his Fourth Amendment rights because he had left his apartment before the search warrant was executed, and thus the warrant did not give the police the authority to stop and detain him six blocks from his apartment at the time of the warrant's execution. The trial court denied the motion upon principles established in Terry v. Ohio, 392 U.S. 1 (1968), and its progeny governing the police's authority to effect an investigatory traffic stop. The court found that the police had reasonable suspicion, based on the information in the affidavit supporting the search warrant, to believe that Lawson was "in possession of narcotics and engaged in distribution of that substance" at the time of the stop. Thus, the court concluded, the stop and detention of Lawson, and the search of his vehicle, did not violate his Fourth Amendment rights.

Lawson was subsequently convicted, in a bench trial, of possessing cocaine with the intent to distribute. In this appeal, he challenges the trial court's ruling on his suppression motion.

## II. ANALYSIS

When this Court reviews a trial court's denial of a motion to suppress, "'the burden is upon the [defendant] to show that the ruling . . . constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). Where a Fourth Amendment challenge is at issue, "'ultimate questions of reasonable suspicion and probable cause'" as here presented "involve questions of both law and fact." Id. at 197-98, 487 S.E.2d at 261 (quoting

- 3 -

Ornelas v. United States, 517 U.S. 690, 691 (1996)). Thus, "we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004) (citation omitted).

A.

In stopping Lawson's vehicle and detaining him, Investigator Lee effected a seizure for Fourth Amendment purposes. See Delaware v. Prouse, 440 U.S. 648, 654 (1979); Jackson, 267 Va. at 672, 594 S.E.2d at 598; Shiflett v. Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760 (2005). To justify such action, commonly referred to as a "Terry stop," "a police officer must have a 'reasonable suspicion supported by articulable facts that criminal activity "may be afoot."'" Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)); see Terry, 392 U.S. at 30 (articulating standard); see also United States v. Arvizu, 534 U.S. 266, 273 (2002) ("'An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" (quoting United States v. Cortez, 449 U.S. 411, 417 (1981))). "'Actual proof that criminal activity is afoot is not necessary.'" Shiflett, 47 Va. App. at 146, 622 S.E.2d at 760 (quoting Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992)). A reasonable suspicion justifying an investigatory stop is "something more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity," but "something less than probable cause." Jackson, 267 Va. at 673, 594 S.E.2d at 598 (quoting Terry, 392 U.S. at 27) (some internal quotation marks and other citations omitted). If a police officer is so justified in stopping a suspect, "the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." McGee, 25 Va. App. at 202, 487 S.E.2d at 263. In determining whether such justification for an investigatory stop has been established, "the courts must consider the

- 4 -

totality of the circumstances—the whole picture." Shiflett, 47 Va. App. at 146, 622 S.E.2d at 761 (citations and internal quotation marks omitted).

Given the information Investigator Tennis collected during his two-week surveillance of Lawson, we agree with the trial court that the police were justified in stopping Lawson's vehicle and detaining him, while awaiting the canine unit's arrival and investigation of the vehicle.[2] Tennis' recent observations of Lawson leaving his apartment in his Jeep and apparently conducting drug transactions from his Jeep in a nearby park on multiple occasions, along with Tennis' information indicating that Lawson was also selling cocaine from his apartment, clearly established reasonable articulable suspicion (if not probable cause) that Lawson was, or was about to be, engaged in criminal activity. That is to say, under our objective standard of review of this investigatory traffic stop, we conclude that "the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate[.]" Iglesias v. Commonwealth, 7 Va. App. 93, 102, 372 S.E.2d 170, 175 (1988) (quoting Terry, 392 U.S. at 21-22).

Because the police had reasonable articulable suspicion to justify stopping and detaining Lawson, the constitutional principles Lawson relies upon regarding the police's limited authority to detain persons occupying the premises on which a search warrant for contraband is about to be executed, as the United States Supreme Court addressed in Summers, are not controlling. The Summers Court held that under such circumstances officers may "detain the occupants of the

---

[2] Investigator Tennis' knowledge of the facts regarding Lawson's activity could be imputed to the officers who actually conducted the investigatory traffic stop. See Jacques v. Commonwealth, 12 Va. App. 591, 593-94, 405 S.E.2d 630, 631-32 (1991) (holding trooper had sufficient reasonable suspicion based on information relayed over police radio broadcast). See also White v. Commonwealth, 24 Va. App. 234, 240, 481 S.E.2d 486, 489 (1997) ("'[S]o long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts.'" (quoting United States v. Laughman, 618 F.2d 1067, 1072 (4th Cir. 1980))).

premises while a proper search is conducted." Summers, 452 U.S. at 705. The Court identified three governmental interests justifying the detention: (a) "preventing flight in the event that incriminating evidence is found"; (b) "minimizing the risk of harm to the officers"; and (c) "orderly completion of the search, [which] may be facilitated if the occupants or the premises are present." Id. at 702.

Thus, in Whitaker v. Commonwealth, 37 Va. App. 21, 31-35, 553 S.E.2d 539, 544-45 (2001), cited by Lawson, this Court held that the rationale in Summers did not justify defendant's seizure, where the defendant left the targeted residence with no knowledge of the impending execution of a warrant to search the premises and was then stopped and detained by the police a mile and a half away only because the warrant was about to be executed. We made clear in Whitaker, however, that the Summers and "Terry stop" doctrines were not to be conflated. Citing Williams v. Commonwealth, 4 Va. App. 53, 354 S.E.2d 79 (1987), we explained that even if a person left the targeted premises before the execution of a search warrant, that person, of course, could still be lawfully stopped and detained under Terry if the police possessed reasonable suspicion that he was, or was about to be, engaged in criminal activity. Whitaker, 37 Va. App. at 34, 553 S.E.2d at 545. This distinction in the respective Summers and Terry stop doctrines is also recognized in cases from other jurisdictions cited by Lawson, which further negate his reliance on Summers. See, e.g., Edwards v. United States, 103 F.3d 90, 93-94 (10th Cir. 1996) (defendant's initial detention constituted a valid "Terry stop" even though it was not justified under Summers); United States v. Taylor, 716 F.2d 701, 706-08 (9th Cir. 1983) (same); State v. Mallard, 541 S.E.2d 46, 50-53 (Ga. 2000) (addressing distinction between Summers and Terry doctrines); Commonwealth v. Graziano-Constantino, 718 A.2d 746, 747-48 (Pa. 1998) (same).

B.

Lawson next argues that, "[e]ven if the initial stop was somehow justified, there was no reasonable basis for [his] further detention following the initial questioning and search of his person." His detention "in the back of a police vehicle for upwards of an hour," he contends, "was nothing more than the police waiting for further developments from the search of the apartment, which cannot be justified under either Terry or Summers." Because he was unreasonably detained, Lawson concludes, the search of his vehicle was still a violation of his Fourth Amendment rights. We disagree with Lawson's assessment of both the facts and the law governing the circumstances of his detention.

First, the evidence establishes that, following the search of his person, Lawson was justifiably detained by the police for the purpose of awaiting the arrival of the canine unit to investigate the police's reasonable suspicion that illegal narcotics were located in his vehicle. We reach that conclusion based on "'an objective assessment of the officer[s'] actions in light of the facts and circumstances confronting [them] at the time,' and not on the officer[s'] actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Second, the evidence shows that Lawson was only required to wait twenty to twenty-five minutes for the canine unit's arrival. Our assessment of this aspect of Lawson's detention is to be governed by "common sense and ordinary human experience," as the Supreme Court has refused to adopt a "hard-and-fast time limit for a permissible Terry stop." United States v. Sharpe, 470 U.S. 675, 685-86 (1985). Thus, in assessing whether Lawson's detention was "too long in duration to be considered an investigatory stop," we are to "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain [him]." Id. at 686. As we have previously

- 7 -

recognized, "clear[ly] . . . there will be inevitable delay in obtaining a [narcotics detection] dog" to assist in performing an investigation at the scene of a traffic stop. Limonja v. Commonwealth, 8 Va. App. 532, 543, 383 S.E.2d 476, 483 (1989) (*en banc*). In Limonja, we held that the detention of the defendants for twenty-two minutes while waiting for a narcotics detection dog to arrive at the scene of an investigatory traffic stop did not exceed the bounds of a lawful Terry stop. Id. at 541-43, 383 S.E.2d at 481-83. In doing so, we noted that other courts had upheld detentions as long as seventy-five minutes in similar circumstances. Id. at 543, 383 S.E.2d at 483. We likewise conclude here that the police diligently pursued their investigation of Lawson's vehicle for narcotics by dispatching the canine unit to the scene within twenty to twenty-five minutes.[3]

Finally, the fact that Lawson was placed in the back seat of a police vehicle while awaiting the arrival of the canine unit did not take his detention beyond the scope of a lawful Terry stop.

> Terry stops are not [characterized] . . . by the absence of any restriction upon the suspect's liberty. Indeed, a brief but complete restriction of a suspect's liberty is valid under Terry, and the police are permitted to use methods of restraint that are reasonable under the circumstances. Drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes. Rather, Terry stops differ from custodial interrogation in that they must last no longer than necessary to verify or dispel the officer's suspicion.

---

[3] Though Lawson does not directly challenge the propriety of the use of the narcotics detection dog, we note that the use of the dog "to detect drug contraband in [his vehicle did] not constitute a 'search' for Fourth Amendment purposes," Alvarez v. Commonwealth, 24 Va. App. 768, 775, 485 S.E.2d 646, 650 (1997), and once the narcotics dog alerted on Lawson's vehicle, the police had probable cause to search the vehicle, Jones v. Commonwealth, 277 Va. 171, 180, 670 S.E.2d 727, 732-33 (2009).

Harris v. Commonwealth, 27 Va. App. 554, 566, 500 S.E.2d 257, 263 (1998) (citations and internal quotation marks omitted).  Once again, the officers detained Lawson only so long as was reasonably necessary to procure a narcotics detection dog to scan his vehicle.

### III.  CONCLUSION

In sum, the police lawfully stopped Lawson based on reasonable articulable suspicion that he was, or was about to be, engaged in criminal activity, and then detained him only so long as was reasonably necessary to confirm or dispel that suspicion.  The trial court thus did not err in denying Lawson's suppression motion.  Accordingly, we affirm his conviction.

<u>Affirmed.</u>