COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge Elder and Senior Judge Willis
Argued at Chesapeake, Virginia


WILLIAM BILL CLARK

MEMORANDUM OPINION* BY
v.        Record No. 0946-10-1           JUDGE LARRY G. ELDER
                                         SEPTEMBER 20, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge[1]

John E. Robins, Jr. (Office of the Public Defender, on brief), for
appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


William Bill Clark (appellant) appeals from his bench trial convictions for robbery, Code

§ 18.2-58; use of a firearm in the commission of robbery, Code § 18.2-53.1; wearing a mask in

public, Code § 18.2-422; and breaking and entering while armed, Code § 18.2-91.  On appeal, he

contends police had neither reasonable suspicion to detain him nor probable cause to arrest.  He

contends further that the arresting officer's trial testimony conflicted with her testimony at the

suppression hearing and, thus, provided insufficient credible evidence to support the

investigative detention.  As a result, he argues, the trial court erred in denying both his pre-trial

motion to suppress and his renewed motion, made at the close of the Commonwealth's evidence

at trial.  We hold the evidence was sufficient to support a finding that the police developed, first,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Bonnie L. Jones ruled on appellant's pre-trial motion to suppress.  Judge Hutton
presided over appellant's trial, including the renewal of his motion to suppress, and sentencing.

reasonable suspicion for the detention and, then, probable cause for appellant's arrest. Thus, we affirm the challenged convictions.[2]

In reviewing the denial of a pre-trial motion to suppress, we consider the evidence adduced at both the suppression hearing and at trial to determine whether the denial of the motion was error. Rodriguez v. Commonwealth, 40 Va. App. 144, 149 n.1, 578 S.E.2d 78, 80 n.1 (2003). We view the evidence in the light most favorable to the prevailing party, here the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). "[T]he trial court, acting as fact finder [on the suppression issue], must evaluate the credibility of the witnesses . . . and resolve the conflicts in their testimony . . . ." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975); see Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989) ("It is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question . . . for the . . . [trier of the facts] . . . ."). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc), whereas we review *de novo* the application of defined legal standards, such as whether reasonable suspicion or probable cause supported a seizure, Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911, 920 (1996).

Fourth Amendment jurisprudence recognizes three categories of police-citizen contact: "(1) consensual encounters, (2) brief, minimally intrusive . . . Terry stops, and (3) highly intrusive arrests and searches founded on probable cause." Wechsler v. Commonwealth, 20

---

[2] Appellant presents a third assignment of error challenging the sufficiency of the evidence to support his conviction assuming his motion to suppress was improperly denied. Because we hold the trial court's refusal to suppress the evidence was not error, we do not reach appellant's third assignment of error.

Va. App. 162, 169, 455 S.E.2d 744, 747 (1995) (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "A seizure occurs when an individual is either physically restrained or has submitted to a show of authority" under circumstances in which "a reasonable person would have believed that he or she was not free to leave." McGee, 25 Va. App. at 199-200, 487 S.E.2d at 262.

An officer may effect an investigatory detention if he becomes aware of facts that "lead[] him reasonably to conclude in light of his experience that criminal activity may be afoot" and that the person he detains is or was involved in it. Terry, 392 U.S. at 30, 88 S. Ct. at 1884, 20 L. Ed. 2d at 911. Reasonable suspicion "need not rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 277, 122 S. Ct. 744, 753, 151 L. Ed. 2d 740, 752 (2002). Whether an officer has reasonable suspicion for a Terry stop is based on an assessment of the totality of the circumstances, "which includes 'the content of information possessed by police and its degree of reliability,' i.e.[,] 'quantity and quality.'" Jackson, 267 Va. at 673, 594 S.E.2d at 599 (quoting Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990)). An officer who develops such reasonable suspicion concerning a person may stop that person "in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information" in order to confirm or dispel his suspicions. Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 1647, 84 L. Ed. 2d 705, 711 (1985).

Probable cause, although requiring a higher quantum of evidence than reasonable suspicion, nevertheless

> relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons . . . . [P]robable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.

Taylor v. Commonwealth, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981). "'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction.'" Slayton v. Commonwealth, 41 Va. App. 101, 107, 582 S.E.2d 448, 451 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 2d 1879, 1890 (1949) (citations and internal quotation marks omitted)). Thus, evidence sufficient to provide probable cause to arrest for a crime need not be evidence sufficient to convict for that offense. Id.

Finally, we evaluate the existence of reasonable suspicion and probable cause under a standard of objective reasonableness: "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' The officer's subjective motivation is irrelevant." Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948, 164 L. Ed. 2d 650, 658 (2006) (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 178 (1978)).

Appellant concedes that Officer Partlow's initial encounter with him was consensual. However, he contends that his placement in the back seat of the police car constituted an arrest for which probable cause was required and that police had neither probable cause nor reasonable suspicion to effect such a seizure at that time. We hold the evidence supports the trial court's rulings to the contrary.

First, the evidence supports the conclusion that appellant had merely been detained, not arrested, when Officer Partlow put him in the police car. Lawson v. Commonwealth, 55 Va. App. 549, 559, 687 S.E.2d 94, 99 (2010) (upholding Terry detention in police car while awaiting arrival of canine). Even "[b]rief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert [a Terry stop] into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434

- 4 -

S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994).

Further, the evidence, viewed objectively in the light most favorable to the Commonwealth, supports a finding that, at the time of the seizure, reasonable suspicion existed to believe appellant may have been involved in a crime. When Officer Partlow first approached appellant at 10:26 p.m., she engaged him in a consensual encounter that lasted seven minutes. Partlow knew when she began the encounter that appellant was walking away from the general vicinity in which a restaurant robbery had occurred a few minutes earlier. She also knew he fit the robbers' general description in that he was of the same race and was wearing dark clothing.

When Officer Partlow spoke to appellant concerning his presence in the area, he admitted he had just come from the shopping center in which the robbery had occurred, although he claimed to have been at the nearby convenience store rather than at the restaurant. Appellant also claimed to have walked only on the sidewalk, but his shoes had water droplets, grass, and mud on them, supporting the inference that he had not been honest about the path he had taken. He also had sweat on his brow despite the fact that "it was very cold out." Further, appellant claimed to have gone to the convenience store to use the phone to call his girlfriend, with whom he said he had had an argument, but Officer Partlow had observed appellant carrying and talking on a cell phone immediately before she approached him on the street, suggesting he was not being truthful about his phone and the reason for his trip to the shopping center. When Officer Partlow asked appellant about this inconsistency, he claimed he had run out of minutes on his cell phone and had held it up while walking down the street because he was talking *to himself* and did not want to look foolish. He also made inconsistent statements to Officer Partlow about whether the disagreement he claimed to have had with his girlfriend had occurred during the phone call from the convenience store or in person earlier in the day.

It was against this backdrop that Officer Partlow acquired the more specific information in the updated "be-on-the-lookout" alert (BOL) at 10:33 p.m. That BOL included information that the first suspect was "shorter," "[a]pproximately five foot two to five foot seven," "[a] hundred and twenty to a hundred and forty pounds," and was "last seen wearing a dark hooded sweatshirt, dark jeans that were faded in the front and back," and "black shoes." Officer Partlow noted appellant, like the description of the shorter suspect, had on black shoes and dark faded jeans. Further, the judge who ruled on appellant's pre-trial motion to suppress found the BOL's description of the height, size, and weight of the robbers supported the investigatory seizure. Implicit in this finding is that appellant generally matched the height, size, and weight of the smaller perpetrator. This evidence, coupled with the fact that appellant appeared to have been running through the grass from the area where the robbery occurred but lied about it when questioned, provided reasonable suspicion for the stop.

Once the seizure had occurred, the officers worked to confirm or dispel the suspicions supporting the detention. Within minutes of the 10:33 p.m. seizure, Detectives Felder and Mayer arrived with a witness who had seen a man behind the business shortly after the robbery. Appellant was removed from the car for a show-up, but the witness said appellant was not the person she saw. Appellant was then allowed to smoke a cigarette before reentering the vehicle.

At 10:42 p.m., less than ten minutes after appellant's detention had begun, Officer Boyd and his canine, Falco, arrived on the scene. At 10:19 p.m., Boyd and Falco had started near the scene of the robbery and tracked the "freshest" scent based on "where the suspect was last seen." They started from "the corner of [the restaurant]," adjacent to the laundromat next door, and after winding through some condominiums and the grassy area around a school, during which they found several dollar bills and a black sweatshirt, Falco reached the location where appellant was

being detained. Falco alerted on appellant's portion of the police car by pawing the door and window, indicating appellant was the person whose scent he had tracked from the scene.

In sum, the robbers fled the restaurant at 10:12 p.m., and Officer Partlow engaged appellant in a consensual encounter fourteen minutes later, at 10:26 p.m., about one mile from the restaurant. Seven minutes after that, at 10:33 p.m., Officer Partlow converted that encounter into an investigative detention based upon her receipt of a further description of the robbers, which appellant met. Nine minutes later, at 10:42 p.m., Officer Boyd and canine Falco, who tracked the freshest scent from the restaurant and found money and discarded clothing along the way, arrived at the scene of the detention. Falco immediately alerted on the door of the police car through which appellant had entered, pawing at the door and window. Thus, by 10:42 p.m., a mere thirty minutes after the robbers fled the restaurant, the evidence, viewed objectively, provided probable cause for appellant's arrest. See Noell v. Angle, 217 Va. 656, 662-63, 231 S.E.2d 330, 334-35 (1977) (in a malicious prosecution case, relying on a police dog's tracking from the crime scene to the criminal defendant's front door to hold probable cause existed to charge the defendant with the crime).

Due to the objective nature of the Fourth Amendment reasonableness standard, the fact that the officers did not formally arrest appellant until 11:48 p.m. is not dispositive. "Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." Hoffa v. United States, 385 U.S. 293, 310, 87 S. Ct. 408, 417, 17 L. Ed. 2d 374, 386 (1966).

Finally, even if the evidence that police had gathered by 10:42 p.m. was insufficient to provide probable cause for arrest, the officers continued their investigation, and as soon as Detective Mayer returned to the restaurant and viewed the surveillance video of the robbery, he

was able to identify the "very distinctive" faded jeans he had just seen on appellant as the same jeans worn by the shorter of the two robbers in the video. The court heard Detective Mayer's specific testimony describing the jeans and also had an opportunity to examine the jeans before making its factual finding about their distinctive nature. Thus, the evidence supports the finding that when Detective Mayer radioed the "supervisors out by [appellant] . . . to go ahead and place him in custody," the totality of the circumstances, viewed objectively, including Detective Mayer's observations about the jeans, provided probable cause for that arrest. When the arrest occurred at 11:48 p.m., appellant had been in custody for one hour fifteen minutes, during which the police (a) uncovered no evidence that dispelled their suspicions about appellant and (b) continued to gather evidence contributing to the establishment of probable cause. See United States v. Sharpe, 470 U.S. 675, 685-86, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605, 615 (1985) (declining to adopt a "hard-and-fast time limit for a permissible Terry stop" in favor of allowing "common sense and ordinary human experience [to] govern over rigid criteria"); Lawson, 55 Va. App. at 559, 687 S.E.2d at 98 (holding "police diligently pursued their investigation of Lawson's vehicle for narcotics by dispatching the canine unit to the scene within twenty to twenty-five minutes"); Limonja v. Commonwealth, 8 Va. App. 532, 544, 383 S.E.2d 476, 483 (1989) (en banc) (holding that detaining the defendant for twenty-two minutes while waiting for a drug canine to arrive did not exceed the bounds of a reasonable Terry stop and noting other courts had upheld detentions of up to seventy-five minutes under similar circumstances), cited with approval in Lawson, 55 Va. App. at 558-59, 687 S.E.2d at 98.

For these reasons, we hold the evidence supports the denial of appellant's motion to suppress. Accordingly, we affirm appellant's convictions.

Affirmed.