COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia


CHRIS EVERETTE JOHNSON
                                          MEMORANDUM OPINION* BY
v.        Record No. 0726-22-3              JUDGE LISA M. LORISH
                                              AUGUST 8, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge

Flux J. Neo (Neo Law Firm, PLLC, on briefs), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Chris Everette Johnson for possessing a

firearm after conviction of a violent felony.  Johnson argues that the trial court erred in denying his

motion to suppress the firearm because the police searched a truck that he was driving in violation

of his Fourth Amendment rights.  Finding no error, we affirm.

BACKGROUND

"In reviewing the denial of a motion to suppress based on the alleged violation of an

individual's Fourth Amendment rights, we consider the facts in the light most favorable to the

Commonwealth." *Lawson v. Commonwealth*, 55 Va. App. 549, 552 (2010) (quoting *Ward v.

Commonwealth*, 273 Va. 211, 218 (2007)).[1]

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] As a general rule, "we consider the evidence adduced at both the suppression hearing
and the trial" in our review of the trial court's decision.  *Beasley v. Commonwealth*, 60 Va. App.
381, 385 n.1 (2012) (quoting *DePriest v. Commonwealth*, 4 Va. App. 577, 583 (1987)).  Because

While on patrol on the night of January 17, 2020, Officer Isaac Roberts of the Bristol Police noticed two vehicles parked together in the back corner of a parking lot at a Shell gas station. Officer Roberts parked his police vehicle in a position to observe the movements of the individuals near the vehicles because it was a high-crime area specifically known for narcotics. After watching for about ten minutes, he saw a male, with an item in his hand, leave the vicinity of a sedan and enter the front passenger seat of a black Dodge Dakota truck. Officer Roberts followed when the Dakota left the parking lot and drove in the direction of Interstate 381.

Officer Roberts ultimately pulled over the Dakota based on a suspected moving violation and first approached the passenger side of the truck. The passenger, David Creasy, opened the door because the window was inoperable. Johnson was the driver. Officer Roberts noticed an eighteen-to-twenty-inch knife in a sheath at Creasy's right side. He explained the reason for the stop, and warned Creasy not to reach for the knife. After Officer Roberts asked for identification, Creasy produced a social security card. Johnson provided a Department of Motor Vehicles document with his customer number, but he had no registration or proof of insurance for the truck. Johnson said that he was trying to buy the truck but could not recall the owner's name. Officer Roberts returned to his patrol car and requested backup assistance.

Before backup arrived, Officer Roberts again approached the truck's passenger side; he explained that he planned to secure Creasy's knife and search the vehicle for weapons. Johnson appeared nervous, and his hands were shaking. Johnson "began reaching into areas of the vehicle," and Officer Roberts told him to stop. First, Johnson reached "into his jacket or waistband area." Johnson then reached to move a shirt or jacket from the center console of the

Johnson did not submit a timely transcript or a written statement of facts in lieu of a transcript for the suppression hearing, we cannot consider the evidence presented there. Nonetheless, in light of the parties' written pleadings, the trial court's letter opinion denying the motion to suppress, and the evidence produced at trial, we do not find that the transcript of the suppression hearing is indispensable to our review of the assignments of error on appeal. *See* Rule 5A:8(b)(4)(ii).

vehicle into the back area. While he did this, Johnson told Officer Roberts he was not moving or reaching. Officer Roberts said that "[i]t was a very heated exchange for quite a few seconds [for Johnson] to show me his hands and not to be reaching anywhere." Officer Roberts ordered Johnson not to reach again. After taking his hands "back up front," Johnson "then started reaching into his pockets." Officer Roberts ordered him to show his hands, stop moving, and quit reaching. Johnson then put his hands on the steering wheel, as Officer Roberts directed. Officer Roberts went to the driver's side of the truck to detain Johnson. Johnson commented that he was not consenting to a search of the Dakota and that it was not his truck.

Officer Roberts frisked Johnson for weapons, but did not find any on his person. Officer Jimmy Lacey, who had arrived on the scene, assisted Officer Roberts in detaining Creasy.

Officer Roberts then returned to the Dakota to search it for weapons. Officer Roberts picked up the jacket Johnson had moved to the back area of the truck, lifted the edge of the seat, and saw a semi-automatic handgun in the same area where Johnson had been reaching.

Officer Roberts returned to the spot where Officer Lacey was detaining Johnson and Creasy, placed them in handcuffs, and advised that they were not under arrest but were detained for investigation. The officers determined that both Johnson and Creasy had felony convictions.

At trial, the Commonwealth introduced a recording of Johnson's interaction with the police from Officer Roberts's body-worn camera.

Johnson moved to suppress the evidence, contending that Officer Roberts did not have a lawful basis to order Johnson and Creasy out of the truck and to search the vehicle for weapons. Johnson asserted that he expressly denied consent for the search. Johnson also contended that Officer Roberts arrested him without probable cause. Thus, he claimed, the search and arrest were illegal and the trial court should suppress the evidence obtained during the search.

In a letter opinion denying the motion to suppress, the trial court found that "[u]nder the circumstances of a lawful stop, as here for pending determination of a traffic violation, an officer is justified in conducting a frisk of persons in the vehicle for weapons if the officer reasonably suspects a person is armed and dangerous." The court noted that Officer Roberts testified at the preliminary hearing that Creasy was armed and Johnson had reached toward the middle rear seat despite Officer Roberts's repeated prior instructions not to reach and to keep his hands in view. The court found that with this knowledge, Officer Roberts was justified in conducting a frisk of the occupants of the vehicle "as well as the areas of the [truck]" to which they had access.

A jury convicted Johnson of possessing a firearm after conviction of a violent felony. The court sentenced Johnson to five years of imprisonment.

ANALYSIS

Johnson appeals the denial of his motion to suppress, which sought the suppression of any evidence that Officer Roberts obtained from his pat down of Johnson's person and limited search of Johnson's vehicle. *See United States v. Calandra*, 414 U.S. 338, 347 (1974) (fruits of an unlawful search "cannot be used in a criminal proceeding against the victim of the illegal search and seizure"); *Mapp v. Ohio*, 367 U.S. 643 (1961) (applying the exclusionary rule to state criminal proceedings).

While conceding that Officer Roberts lawfully stopped the Dakota, Johnson argues Officer Roberts did not possess reasonable suspicion that Johnson might have a weapon and gain control of it to justify a search of the vehicle for weapons.[2] The Commonwealth argues that

---

[2] Johnson also assigns error to the search of his person, arguing that Officer Roberts lacked reasonable suspicion to believe he was armed and dangerous upon observing a knife in Creasy's possession, and thus the frisk of Johnson. But because the frisk of Johnson's person yielded no evidence that was introduced against him at trial, nor did it lead to the discovery of any admitted evidence, any consideration of the lawfulness of the frisk of Johnson's person is moot. *See Jenkins v. Commonwealth*, 244 Va. 445, 452 (1992).

Officer Roberts's protective sweep of the truck was supported by reasonable suspicion that Johnson was dangerous and might gain immediate access to a weapon.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal." *McCain v. Commonwealth*, 275 Va. 546, 551 (2008). "We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence," but we "review the trial court's application of the law de novo." *Commonwealth v. Smith*, 281 Va. 582, 589 (2011) (quoting *Jones v. Commonwealth*, 279 Va. 665, 670 (2010)). The defendant has the burden of proving reversible error. *Id.* at 588-89.

Under settled Fourth Amendment principles, a law enforcement officer may briefly stop an individual for investigative purposes if they reasonably suspect that "criminal activity may be afoot," and they may conduct a limited pat-down "frisk" of individuals they reasonably suspect to be "armed and dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). If, during a lawful traffic stop, an officer develops reasonable suspicion that an individual is dangerous and "may gain immediate control of weapons," they may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).

"To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or 'hunch.'" *McCain*, 275 Va. at 552. Instead, the officer must "supply a particularized and objective basis" for the stop or search. *Id.*; *see also Terry*, 392 U.S. at 21-22 ("[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925))).

This Court evaluates the basis of a *Terry* stop or search "from the perspective of a reasonable officer on the scene." *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995). In doing so, we consider the totality of relevant circumstances, which may include "the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime." *McCain*, 275 Va. at 554. Certain factors, including the character of the area and time of the stop, are often relevant, but never dispositive. *Id.* at 552 ("The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped.").

The application of these principles in *Hill v. Commonwealth*, 297 Va. 804 (2019), guides our analysis here. In *Hill*, law enforcement officers approached Hill, sitting alone in his car, in a "high-crime, high-drug" area. *Id.* at 809. As they pulled their car up next to the defendant's car, Hill started "looking up and down, up and down, and he was constantly doing a bunch of movement inside of the vehicle." *Id.* When the officers approached the defendant's car, Hill "looked up towards" the officers and started reaching down behind the driver's seat, his back and head turned away from the officers. *Id.* at 810. Fearing Hill was reaching for a weapon, the officers ordered him to stop and show his hands, but he continued "digging down, reaching." *Id.* The officers then removed Hill from the vehicle and conducted a protective sweep of the area for which Hill had been reaching. *Id.*

Johnson attempts to distinguish *Hill*, arguing that because Officer Roberts expressed his intent to search the vehicle as soon as he noticed Creasy's knife, he did not in fact consider certain key circumstances, including Johnson's conduct. He also contends that Creasy's possession of the knife is not probative of whether Johnson was armed and dangerous, that the

officer's failure to immediately conduct the search defeats "the type of urgency" present in *Hill*, and that Johnson cooperated with the officer's instructions. We reject these arguments, largely because we judge the objective reasonableness of an officer's actions in the moment they conduct the search. *Terry*, 392 U.S. at 21-22 (in determining whether officer had reasonable suspicion courts must ask whether "the facts available to the officer *at the moment of the seizure or the search* 'warrant a man of reasonable caution in the belief' that the action taken was appropriate" (emphasis added) (quoting *Carroll*, 267 U.S. at 162)).

At the time Officer Roberts conducted the protective search, several circumstances supported reasonable suspicion. Upon stopping the vehicle, Officer Roberts noticed that Creasy had a knife sheath, and Creasy confirmed it contained a knife. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) (a search "for weapons might be . . . necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law"). This stop occurred late at night, in a high-crime area known for narcotics, and according to Officer Roberts, both passengers appeared "very nervous." When Officer Roberts told Johnson and Creasy that he planned to search the vehicle, Johnson started reaching "into areas of the vehicle," and Officer Roberts told him to stop reaching. After Officer Roberts first advised Johnson to stop reaching, Johnson reached "into his jacket or waistband area." After Officer Roberts asked Johnson to stop reaching for the second time, Johnson reached for a shirt or jacket from the center console and placed it "toward the back area." After a third request to stop reaching, Johnson's hands came "back up front"; then Johnson "started reaching into his pockets."

Under these circumstances, and given our Supreme Court's decision in *Hill,* a reasonable officer could have suspected that Johnson was armed and dangerous at the time the search was conducted. The time of the stop, the character of the surrounding area, the presence of an armed passenger, and Johnson's evasive conduct reasonably suggested to Officer Roberts that Johnson

- 7 -

was attempting to access or conceal a weapon and was a potential threat to his safety. *See Hill*, 297 Va. at 821 ("Hill's physical response to the detectives' multiple commands that he show his hands—a clear and sustained expression of fear for their personal safety—shows why the seizure was justified."). Officer Roberts therefore acted properly in conducting a limited search of "those areas [of the vehicle] to which [the defendant] would generally have immediate control, and that could contain a weapon." *Long*, 463 U.S. at 1050, *cited with approval in Arizona v. Gant*, 556 U.S. 332, 346-47 (2009).[3]

## CONCLUSION

For these reasons, the trial court did not err in denying the motion to suppress and we affirm the judgment.

*Affirmed.*

---

[3] To the extent Johnson challenges the scope of the search, we find the scope of the search was proper. Although Johnson did not have immediate access to the vehicle at the time of the search, "if the suspect is not placed under arrest, he will be permitted to reenter his automobile [once released from detention], and he will then have access to any weapons inside." *Long*, 463 U.S. at 1052; *see also Hill*, 297 Va. at 810, 822 (affirming search of vehicle after defendant was removed from the car). Because Johnson was not under arrest at the time of the search, Officer Roberts properly searched areas of the vehicle where Johnson could immediately access a weapon upon his return to the vehicle.