COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Callins and Frucci
Argued at Salem, Virginia

JACOB RYAN TOLLEY

v.      Record No. 0300-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DOMINIQUE A. CALLINS
FEBRUARY 25, 2025

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Jonathan B. Tarris (Tarris Law PLC, on briefs), for appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Upon entering a guilty plea, Jacob Ryan Tolley was convicted of one count of possession

of a Schedule I or II controlled substance in violation of Code § 18.2-250.  On appeal, Tolley

argues that the trial court erred in denying his motion to suppress the evidence seized during a

traffic-stop search of his vehicle because the officers who conducted the search did so outside of

their lawful jurisdiction.  For the following reasons, we disagree and affirm the trial court's

judgment.

BACKGROUND

On April 4, 2022, officers from the Botetourt-Rockbridge Regional Drug Task Force (the

"Task Force") conducted surveillance of a home located at 36 Edgewood Drive in the City of

Lexington.  Members of the Task Force had been sworn in as Special State Police Officers

("SSPOs") with the Virginia State Police.  Based off prior complaints from neighbors and an

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

investigation by Investigator Flint, Investigator David Anderson and Deputy Chris Wade learned that drug activity involving methamphetamine was taking place at the home. Wade had also previously conducted a controlled purchase from the home. During the surveillance, officers saw an orange 2005 Chevrolet Aveo and a black 1992 GMC Sonoma simultaneously leave the home. Following the departure of the two vehicles from the home, Flint told Wade to be on the lookout for them. Wade observed the Sonoma for the first time when he saw it parked in a Sheetz parking lot in Lexington. Wade saw the Aveo pull into the parking lot and park two spots down from the Sonoma. The driver of the Aveo got out of his vehicle, walked up to the window of the Sonoma, and conducted what Wade believed to be a hand-to-hand methamphetamine transaction. Wade was unsure, however, what precisely the two individuals exchanged. Anderson heard Wade report his observations over the radio.

Both vehicles eventually left the Sheetz to return to the house on Edgewood Drive. Wade conducted a stop of the Aveo while Anderson continued to search for the Sonoma. Anderson located the Sonoma at a stop sign on Morrison Drive in Lexington. The Sonoma proceeded west on Morrison Drive before abruptly making an illegal U-turn. After observing the illegal U-turn, Anderson conducted a stop of the Sonoma and drew his firearm as he got out of his vehicle. Upon making the stop, Anderson identified Tolley as the driver of the Sonoma. After being informed that Anderson had stopped the Sonoma, Wade went to the scene with his police dog. Upon Wade's arrival, Wade encountered Tolley outside of the Sonoma and asked for his identification. When Wade ran Tolley's information, he learned that his license had been revoked. Wade informed Tolley that he was the K-9 officer in Rockbridge County and that he was going to walk his police dog around the vehicle.

During the canine search, Wade received a positive alert on the Sonoma's passenger door seam. After the positive alert, Wade searched the Sonoma. Wade found digital scales in the

passenger seat and a plastic bag containing methamphetamine. Tolley was arrested and indicted for possession of a Schedule I or II controlled substance in violation of Code § 18.2-250.

On January 5, 2023, Tolley filed an amended motion to suppress the evidence found in his vehicle, arguing that the officers did not have specific and articulable facts that Tolley had committed a felony and that the officers did not have the lawful jurisdiction to stop Tolley for a traffic infraction in the City of Lexington. On January 13, 2023, the trial court granted Tolley's motion to suppress. During a hearing on the motion, the trial court concluded that "the only possible reasonable basis for Anderson's stop would be a U-turn" but "to stop someone for a U-turn and jump out and draw your firearm . . . it puts in a different light the actual basis for the stop."

The Commonwealth appealed the trial court's judgment to this Court. *Commonwealth v. Tolley*, No. 0087-23-3, 2023 Va. App. LEXIS 327 (May 23, 2023). In its appeal, the Commonwealth argued that the trial court erred in granting the motion to suppress because the court improperly considered Anderson's subjective basis for stopping Tolley, rather than the objective circumstances justifying the stop. *Id.*, slip op. at 3, 2023 Va. App. LEXIS 327, at *3. This Court agreed with the Commonwealth and held that Tolley's illegal U-turn, in violation of Code § 46.2-845, objectively established reasonable, articulable suspicion that Tolley had violated the law, which rendered the traffic stop constitutionally permissible. *Id.*, slip op. at 4, 2023 Va. App. LEXIS 327, at *4-5. This Court reversed the trial court's judgment and remanded the case for further proceedings. *Id.*, slip op. at 4, 2023 Va. App. LEXIS 327, at *5.

On November 27, 2023, Tolley filed a second motion to suppress with the trial court. In his motion, Tolley argued, among other things, that the officers who conducted the traffic stop on him did so outside of their lawful jurisdiction as officers, and thus the seizure was unreasonable. After a hearing, the trial court denied the second motion to suppress, concluding that it was

required to adhere to the prior ruling from this Court that the traffic stop was constitutionally permissible. Tolley subsequently pleaded guilty to violating Code § 18.2-250 and was sentenced to four years of incarceration with three years and three months suspended.[1] This appeal followed.

ANALYSIS

"On appeal of the denial of a motion to suppress, the defendant bears the burden of showing that the trial court committed reversible error." *Wolfe v. Commonwealth*, 67 Va. App. 97, 101 (2016). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." *Id.* (alteration in original) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). "However, 'we review *de novo* the trial court's application of legal standards . . . to the particular facts of the case.'" *Id.* (alteration in original) (quoting *McCracken v. Commonwealth*, 39 Va. App. 254, 258 (2002)). "To the extent that this Court interprets the language of a statute, 'we rely on the familiar principles of statutory construction, and review [the] issue *de novo*.'" *Id.* at 101-02 (alteration in original) (quoting *Hines v. Commonwealth*, 59 Va. App. 567, 573 (2012)).

Tolley argues that the trial court erred in denying his second motion to suppress because the officers in this case did not have the lawful jurisdiction to conduct a traffic stop on him in the City of Lexington. Citing Code § 19.2-250, Tolley asserts that an officer's jurisdiction extends only one mile outside of the jurisdiction's corporate limits and that this extension only applies to criminal offenses and not traffic infractions, which are not classified as criminal offenses under Code § 18.2-8. Citing Code § 19.2-249, Tolley also asserts that officers assigned to a particular

---

[1] Tolley's guilty plea stated that he would "waive any and all rights of appeal with regard to any substantive or procedural issues involved in this prosecution, except for claims of ineffective assistance of counsel and any related claims, jurisdiction, or a sentence exceeding the statutory maximum." The Commonwealth does not assert that the jurisdictional issues Tolley raises in this appeal were waived through his guilty plea.

county jurisdiction may conduct arrests in a city only if the offense is committed within 300 yards of the boundary line between the county and city; and here, there was no evidence that Tolley's illegal U-turn fell within 300 yards of the Lexington city boundary line. Tolley finally asserts that, under Code § 15.2-1726, localities may enter into reciprocal agreements permitting officers to perform their duties within other localities under the agreement; but here, the only evidence of such an agreement—the Task Force's Memorandum of Understanding ("MOU")— did not state that the City of Lexington was a party, and the MOU also forbade SSPOs from becoming involved in matters not related to drug offenses.

Assuming, arguendo, that the officers in this case did not have jurisdiction under Virginia law to stop Tolley's vehicle in the City of Lexington for committing a traffic infraction, the trial court nevertheless did not err in denying Tolley's second motion to suppress because "[a]bsent an infirmity of constitutional dimensions, the 'mere violation of state statutory law does not require that the offending evidence be suppressed, unless the statute expressly provides for an evidentiary exclusion remedy.'" *Cutright v. Commonwealth*, 43 Va. App. 593, 600 (2004) (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 757 n.7 (2004)). "Virginia law does not, as a general matter, require suppression of evidence obtained in violation of state law." *Virginia v. Moore*, 553 U.S. 164, 167 (2008). "Under Virginia law, no suppression of evidence is required when evidence is obtained in violation of state law but when no constitutional violation has occurred." *Penn v. Commonwealth*, 13 Va. App. 399, 407 (1991), *aff'd per curiam*, 244 Va. 218 (1992). "[T]he Virginia Supreme Court has consistently declined to impose an exclusionary rule where no deprivation of the defendant's constitutional rights occurred." *Thompson v. Commonwealth*, 10 Va. App. 117, 122 (1990).

Here, this Court has already ruled that the traffic infraction committed by Tolley in Lexington "'clearly established reasonable articulable suspicion (if not probable cause)' that

Tolley had violated the law, rendering the traffic stop 'constitutionally permissible.'" *Tolley*, slip op. at 4, 2023 Va. App. LEXIS 327, at \*5 (first quoting *Lawson v. Commonwealth*, 55 Va. App. 549, 556 (2010); and then quoting *McCain v. Commonwealth*, 275 Va. 546, 553 (2008)). Further, none of the jurisdictional statutes cited by Tolley in his opening brief contain any language expressly providing for an evidentiary exclusion remedy when these statutes are violated by a Virginia police officer.[2]

Accordingly, since the officers in the present case neither committed a constitutional violation in conducting the traffic stop on Tolley nor violated a Virginia statute expressly providing for an evidentiary exclusion remedy, the trial court did not err in denying Tolley's second motion to suppress.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[2] In his reply brief, Tolley contends that Code § 19.2-60—which states that "[a] person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence"—broadly provides for an evidentiary exclusion remedy in all cases involving a seizure conducted in violation of state law. However, Tolley raises this argument for the first time on appeal, and in his reply brief. Thus, we do not consider it. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."); *see also Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (standing for the proposition that an appellant may not raise an argument for the first time in a reply brief).