COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Callins and Frucci

CARLOS DEONTE HOWARD

                                                        MEMORANDUM OPINION[*]
v.        Record No. 1131-24-3                          PER CURIAM
                                                        JUNE 24, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief),
for appellant.

(Jason S. Miyares, Attorney General; Sheri H. Kelly, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Botetourt County convicted Carlos Deonte

Howard of possession of cocaine.[1]  On appeal, he contends that the circuit court erred by denying

his motion to suppress the evidence obtained from the search of his vehicle.  After examining the

briefs and record in this case, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"On appeal, 'we review the evidence in the "light most favorable" to the Commonwealth,'

the prevailing party below."  *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)).  "That principle requires us to

'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Howard also pleaded no contest to solicitation of prostitution.  Howard does not
challenge that conviction.

all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Id.* (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

On June 20, 2023, a Virginia State Police taskforce conducted an undercover operation designed to investigate the solicitation of prostitution in the Roanoke Valley region. Howard responded to an online advertisement placed by an undercover officer advertising "dating services." Via text message, Howard was instructed to come to a Botetourt County motel. There, Howard met the officer who was posing as a prostitute at a room at the motel. Howard selected the sex acts he desired, chose lingerie for the undercover officer to wear, and gave her $130 in cash. As Howard removed his pants, he asked the officer, "Do you smoke weed?" She responded that she preferred cocaine; Howard stated that he would have brought her some if he had known and that he "can bring [her] some."

A tactical team entered the motel room. After a struggle, they detained, handcuffed, and brought Howard to an interview room. After the police detained Howard, Roanoke City Police Detective Flippen, who recognized Howard from previous encounters, approached Howard's vehicle in the parking lot and saw "a black canister that resembled a sprinkler head" in the vehicle's center console. Detective Flippen recalled that years earlier he had executed a search warrant and found Howard using an identical container to conceal cocaine. He shared his observation with another officer who then requested a narcotics canine.

In the interview room, Virginia State Police Special Agent Shively spoke with Howard while Senior Trooper Southern prepared a summons charging Howard with solicitation of prostitution. Special Agent Shively advised Howard of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Howard initially declined to speak to the police but then made spontaneous remarks during the encounter. The officers explained the solicitation charge, obtained Howard's identifying information, and conducted a warrant check. Trooper Southern continued filling out the

summons and collecting evidence and information from the undercover officer. Meanwhile, the drug-detecting canine unit was in route.

Five minutes after the canine unit arrived at the motel, and approximately 15 to 17 minutes after Howard had been detained, canine Niko alerted on Howard's vehicle. After the alert, Virginia State Police Special Agent Lambert searched the vehicle. Inside the sprinkler head container, he found what testing later confirmed were individually wrapped rocks of crack cocaine. Also in the center console, the police found $1,000 in currency wrapped in rubber bands and a credit card bearing Howard's name.

In his motion to suppress the evidence obtained from the search of his vehicle, Howard argued that his detention of 15 to 17 minutes was impermissible under *Rodriguez v. United States*, 575 U.S. 348, 350 (2015), in which the Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Howard asserted that his detention for the solicitation charge was unlawfully extended to wait for the canine unit to arrive. The circuit court denied the motion, finding that, unlike in *Rodriguez*, the purpose for detaining Howard had not been completed, i.e., writing the summons. Further, the circuit court held that the police had reasonable suspicion to believe there was contraband in the vehicle based upon Howard's statements and the officer's observations.

After trial, the circuit court convicted Howard of possession of cocaine. Howard appeals.

ANALYSIS

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn

from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

Relying in part on *Rodriguez*, 575 U.S. at 354, Howard argues that the police unlawfully extended his detention as they investigated him for the solicitation charge. "A seizure for a traffic violation justifies a police investigation of that violation." *Id.* The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). In the end, the encounter can last only as long as it would take a reasonable officer standing in the arresting officer's shoes to either dispel or confirm a reasonable suspicion that a crime was afoot. *See Williams*, 71 Va. App. at 482. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350. Here, Howard argues that the police unlawfully extended his detention as they waited for the drug detecting canine to arrive. "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51 (alterations in original) (quoting *Caballes*, 543 U.S. at 407).

Following *Rodriguez*, a police officer may not extend a stop to conduct a canine sniff "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at

- 4 -

355. But "[i]f an officer develops independent reasonable suspicion or probable cause that a[] [detainee] has committed an additional traffic offense or crime, the officer may extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion." *Williams*, 71 Va. App. at 482; *see also Matthews v. Commonwealth*, 65 Va. App. 334, 345 (2015) (explaining that the seizure of the appellant and search of his vehicle was "improper, unless [the officer]'s unrelated questions and conduct can be supported by independent reasonable suspicion or probable cause").

After detaining Howard, and during the process of completing the summons for the solicitation offense, law enforcement officers were aware that (1) Howard had a suspicious cannister in his vehicle that was identical to a container that he had previously concealed narcotics in, and (2) Howard told the undercover officer that he "can bring [her] some" cocaine. Thus, we find that the record supports the circuit court's conclusion that Howard's statements and Detective Flippen's observations provided the police with "independent reasonable suspicion that [Howard] ha[d] committed an additional . . . crime"; i.e., there were drugs in his vehicle. *Williams*, 71 Va. App. at 482. Assuming without deciding that Howard's detention was prolonged to conduct the canine sniff, we find that the detention was extended "for a reasonable amount of time in order to confirm or dispel th[e] new suspicion," as Howard had only been detained for 15 to 17 minutes by the time Niko alerted on his vehicle. *Id.* Like this Court found in *Lawson v. Commonwealth*, 55 Va. App. 549, 558 (2010), we find that Howard "was justifiably detained by the police for the purpose of awaiting the arrival of the canine unit to investigate the police's reasonable suspicion that illegal narcotics were located in his vehicle." Accordingly, we find no error with the circuit court's denial of Howard's motion to suppress.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*